Henderson, Judge,
 

 delivered the opinion of the Court:
 

 The first question presented for the consideration of the Court, is the priority of the respective grants of the parties. Leggat’s has the lowest number, but it calls for Swain’s lands: the number must therefore yield to this call, and Swain’s must be considered as first made. The number was then no part of the grant j it was only a mark put upon it by the Secretary for convenience, not when he countersigned, but when he revised it.
 

 The next question, to-wit, the boundaries of Leggat’s grant, is rather one of fact than of law, and dependant on a variety of circumstances, proper only for the consideration of a Jury. We will, however, examine those facts as sent here, more for the purpose Of shewing that it is a question of fact, than of elucidating the points arising on the record for
 
 our
 
 decision.
 

 Swain’s patent, under which the lessors of the Plaintiff claim, when laid down according to its calls, leaves but a narrow slip of land, not more perhaps than ten steps wide,
 
 *543
 
 rnggat arc described in
 
 “
 
 begin-between it and the river, and perhaps not more than fifty long: and- the lands granted to bis grant as lying between Swain’s and the river,
 
 fe
 
 ingata sycamore, John Swain’s corner on the river, thence north 25° west 254 poles to a gum, thence north 33° “ east 64 polos to a gum, thence- south 25° east 254 poles to
 
 “
 
 a chcsnat oak on the. river, thence up the river to the
 
 “
 
 first station which when laid down according to its calls, runs across Swain’s lands diagonally, and'terminates many poles beyond Swain’s back line, including of lands lying between Swain’s lands and the river,, not more, ' than one-third or one-fourth of an acre. It is contended, on the part of the Plaintiff, that as Leggat’s lands arc described as lying between Swain’s and the ri.ver, every other description of its locality must be controlled by and give way to that, ta-wit, distance, courses, marked lines, corners, and quantity; and in support of,this,.it is said, that it is the province of the particular- description lo abridge and limit, but not to enlarge the general description ; and Lord Bacon’s 13th maxim, 2 Coke Rep. GS Bodding-ton’s case, Cro. Jac. 22, and 8 East. 91, are relied on to support it. From these authorities, which arc nothing but rules or maxims founded in common sense, it- appears, that where the thing referred to, has no particular name, and there are superadded to the general description, specifications or localities, all these specifications or localities must concur to point out the object, otherwise it does not appear to bo the thing intended. As if I grant all my lands in Dale, which I purchased of I. S; and which arc in the tenure of I. N; all these specifications must concur, otherwise there is nothing- described. But if White Acre, which I scended to me from my father, thing described, purchased of I. gran
 
 t
 
 S, and which de-
 
 Wkite Jicrs
 
 will pass, although I purchased it of I. N, and not from I. S ; and although it descended to me from my mother and not from my father: it is sufficiently identified by its name, and
 
 *544
 
 the other descriptions are not sufficient to render it uncertain. They are therefore rejected or disregarded.
 

 This may be further illustrated thus ,• I grant to J. S. one thousand acres of land and no more, bounded as follows, &c. and two thousand acres are included in tiie lines. The two thousand acres pass, as the buts and bounds are more certain than quantity, which depends on admeasurement and calculation
 
 ;
 
 and the quantity is in no way material, except in lands where the boundaries are doubtful, and there it may be thrown into the one scale or the oilier as a circumstance.
 

 On tiie other hand, it was contended that whatever may be the effect of Leggat’s grant to pass the title of the lands, it actually runs across Swain’s patent in the manner before described. To prove this, reliance is placed on the course and distance, the immense disparity between the quantity called for and that lying between Swain’s and the river j that by stopping at Swain’s front on the.river line, and running Leggat’s next course and distance, bis lands are thrown one-half or more into the river, and the residue on the opposite side. Now a greater part of the above are questions of fact, and which the Court cannot decide on. It was the province of the Jury to do
 
 so;
 
 and if some be rules of law and some of fact, the decision belongs to the Jury under the superintendence of the Court as regards the law, and the competency and relevancy of the evidence. In fact, boundary is a question of fact, at least of fact and law combined, and for the decision of the Jury and not of the Court.
 

 But if the Jury were of opinion that Leggat’s grant covered the lands in dispute, the next question is, does the possession of eighteen years under it, give a right, Leggat knowing at the time he entered that Swain’s patent covered the land ? I assume it as a fact, that Leggat had notice of the bounds of Swain’s patent, because from his being a chain carrier, although it be a slight circumstance, the
 
 *545
 
 Jury might infer that he bad sucb notice, and the Court very properly left that circumstance to them.
 

 Leggat is very clearly within the words of the statute of limitations, even with the addition that there must be co-lour of title, if the Jury believed his grant covers the land, lie. has had a possession for more than seven years, under a grant purporting to convey the lands to him, and which would have, been operative but that the grantor had before parted with his interest. Whether he knew or not of any other title, the Legislature which passed the act of 1715, did not seem to consider material. The words are general, not in favour of those possessors who did not know of any other title. Í would say that the lav,', as so construed, is politic and w ise. On the one hand, it may be said, that
 
 no mala jiile
 
 possessor should acquire aright, no matter how long his possession may have continued. Yet as parol evidence must be gone into for the purpose of proving the
 
 mala fAes,
 
 and it being a thing dependant on a knowledge in the possessor, a thing which may he drawn upon him by perjury without a possibility of contradiction, the object of passing the act would be frustrated, it would tend to render titles insecure. To discourage, new settlements and improvements, particularly of a lasting kind, in which all countries are much interested, and more especially a new one, as ours was then and even now7, would m a great degree repeal the act; and if it did not, it would damp the spirit of enterprise and improvement, which it was the intention of the Legislature to cherish and pro-, tcct. But for us, as mere expounders of the law, it is sufficient to say, that thebe is no such exception in the words of the act; nor is there in the act any thing which autho-rises us to say that the Legislature meant otherwise than as they have plainly expressed themselves on the subject now under consideration. Believing, tiierefore, that the Jury were misdirected on this point, the rule for a new' trial must be made absolute.