Andrews, J.
The learned judge at the circuit, at the commencement of his charge to the jury, stated to them that the plaintiffs were required to make out their case, and to prove that the defendant, Thacher, was not elected, and practically to show that the relator, Judson, was elected to the office of mayor, by having received the greatest number of votes at the election. It was an undisputed fact in the case that seven hundred and twenty-nine votes were cast for mayor in the southern district of the fourth ward, and evidence was given on the part of the plaintiffs tending to show that, of these, two hundred, or thereabouts, were cast for the relator, and one hundred and thirty-four for McCarty, the independent candidate. The defendant, Thacher, did not attempt on the trial to show the number of votes cast for him in that district, except by the return of the inspectors, and proof of the number of ballots on the table containing his name, counted by the *528 inspectors. The plaintiffs attacked the return of the inspectors as false and fraudulent, and claimed that it should be rejected by the jury in considering the case. The judge, at the conclusion of his charge, was requested by the. plaintiffs’ counsel to charge the jury that if the return was rejected, and the jury should find that seven hundred and twenty-nine votes for mayor were cast in that district, they could, not presume, in the absence of proof, that the votes not proved to have been given for the relator and McCarty were cast for the defendant, and that they could only allow to him such votes as the evidence in the case shows that he received. The judge refused to charge as requested. It is manifest from the charge made, and from the refusal of the judge to charge the proposition here adverted to, that the case was treated and regarded by him, with respect to the onusprobcmdi, as an ordinary action in which it was incumbent upon the people and the relator to show affirmatively the absence of title in the defendant to the office of mayor, before judgment of ouster could pass against him.
It is important, in dealing with the questions presented in the case, to determine whether the view stated by the learned judge, as to the burden of proof, is an accurate expression of the law. The ancient writ of quo warranto was a writ of right for the king, against one who usurps any office, franchise or liberty, to inquire by what authority he supports his claim, in order to determine the right- (3 Bl., 262.) In theory, the king was the fountain of honor, of office and of privilege. And, whenever a subject undertook to exercise- a public' office or franchise, he was,- when called upon by the crown, through the-writ of quo warranto, compelled to show his title, and, if he failed to do-so, judgment passed against him. The foundation of the rule may have been that, as all offices and franchises are the gift of the king, they were deemed to be possessed by him, and, until his grant was shown, there could be no presumption that he had parted with them, or invested a subject with the right to exercise, by delegation, any part of the royal prerogative; *529 but whatever may have been the origin of the rule, it was well established, and was applied also in cases where proceedings by information, in the nature of a quo warra/nto, were resorted to as a substitute for the writ. (Rex v. Leigh, 4 Burr., 2143.) In this State, the rule that, in proceedings by information to try the title to an office, the burden is upon the defendant to show his right, and that failing to do it, judgment must go against him, has been frequently recognized. (People v. The Utica Ins. Co., 15 John., 358; People v. Thompson, 21 Wend., 252 ; 23 id., 567, 589; The People v. Pease, 27 N. Y., 63; see also Kyd on Corporations, 399; Cole on Quo Warranto, 221.) The writ of quo warra/nto and proceedings by information in the nature of a quo warranto have been abolished (Code, § 428), and a remedy by action is given. The action may be brought by the attorney-general, in the name of the people, upon his own information, or upon the complaint of any private party, against a person who shall usurp, intrude into or unlawfully hold or exercise any public office; and the provision of the Bevised Statutes (2 R. S., 582, § 35) which extended the scope of the original proceeding by quo wa/rranto, and which allowed the attorney-general to set forth in his information the name of the person rightfully entitled to the office in controversy, with an averment of his right thereto, and authorized judgment to be rendered upon such right, as well as upon that of the defendant, has been preserved. (Code, §§ 435, 436.)
The forms of procedure have been changed, but the position of the defendant, and the rules of evidence, and the presumptions of law and fact are the same as in the proceeding by writ or information, for which the remedy by action was substituted. The people are here the ultimate source of the right to hold a public office ; and now, as heretofore, when the right of a person exercising an office is challenged in a direct proceeding by the attorney-general, the defendant must establish his title, or judgment will be rendered against him. It results from these considerations that the defendant, in order to have judgment in his favor, was required to prove that he *530 was elected to the office of mayor at the election held in April, 1872. The possession of the office was not in this action evidence of his right. The burden was upon him to show by affirmative evidence that his possession was a legal and rightful one. But a failure on his part to prove his title to the office would not establish that of the relator. Upon the issue of the relator’s title the plaintiffs held the affirmative, and the onus probanda was upon them to maintain it. Judgment in the action might have been rendered against the defendant without adjudging that the title to the office was in the relator.
The defendant Thaeher held the certificate of the city canvassers certifying to his election to the office of mayor by a plurality of votes cast at the election. This was produced and proved on the trial, and was prima facie evidence of his election. The certificate is made out from the returns of the inspectors of the several election districts. The returns are made by public officers charged with the duty of receiving and canvassing the votes in their respective districts, and the presumption which always exists in favor of the due .performance of official duty makes the return and the certificate of the city canvassers evidence of the facts contained in them. But they are prima facie evidence only. It had been held in a series of cases in this State, before the case of The People v. Pease (27 N. Y., 45), that the returns of election officers were open to inquiry and correction to the extent of allowing proof of clerical mistakes and omissions by the inspectors, and that defective ballots not allowed to the defeated candidate were intended for him. But the doctrine of the case of The People v. Pease was much more radical and comprehensive. Starting with the principle that the election, and not the return, is the foundation of the right to an elective office, it was held that it was competent, in an .action to try the title, to go behind the ballot-box and purge the return by proof that votes were received and counted which were cast by persons not qualified to vote. In that case no fraud or misconduct was imputed to the inspectors. *531 The disputed votes had been received by them in good faith. The right of the persons offering them to vote was not challenged at the time, and the return accurately stated the result of the election as shown by the count of the ballots actually deposited according to the forms of law. The case is a strong illustration of the disposition of the courts in this State, in election cases, to look through the formal evidence of the right to the right itself, and to set aside the return of election officers when necessary to promote the ends of justice. Freedom of inquiry in investigating the title to office tends to secure fairness in the conduct of elections, faithfulness and integrity on the part of returning officers, and it weakens the motive for fraud or violence by diminishing the chances that they may prove successful in effecting the objects for which they are usually employed.
The controversy in this case is brought down to the question of the vote in the southern district of the fourth ward. Excluding from consideration the vote of that district, the relator had in the. other parts of the city a plurality of one hundred and forty-six votes. Including that vote as returned by the inspectors, the defendant Thaeher had in the city a plurality of two hundred and one votes over those cast for the relator. The inspectors certify in their return that the whole number of votes cast for mayor was six hundred and fifty-two, of which the defendant received four hundred and sixty, the relator one hundred and thirteen, and McCarty seventy-nine. It was conceded on the trial that there were in fact seven hundred and twenty-nine votes for mayor in the district, and the certificate, so far as it relates to the whole number of votes cast for that officer therein, is manifestly untrue. The mayor’s box was the fourth one canvassed by the inspectors, and while the canvass of the other boxes was being made it was standing upon a low shelf, and was observed to be unlocked. There were several persons in the room beside the election officers. When the canvass of the vote for the other officers was completed, the inspectors took the box containing the ballots for mayor and placed them on the table, *532 and while engaged in assorting them the light was suddenly extinguished. There was a short interval of entire darkness, and when light was procured the inspectors proceeded to count the ballots then on the table, and the result corresponded with the statement contained in their return. The discrepancy between the whole number of votes cast for mayor and the number certified by the inspectors in their return arises from the fact that the return was based upon the ballots counted, and not upon the number actually cast at the election. That the seventy-seven missing ballots for mayor were fraudulently taken either from the box or table, does not upon the evidence admit of doubt. It is impossible to account for the discrepancy between the ballots cast and counted upon any other theory. The opportunity to commit the fraud existed. The box containing the ballots had been left unlocked, and during the sudden and unexplained darkness, if not before, the fraud might have been accomplished. The testimony of witnesses denying participation in the fraud cannot overcome the weight and force of the conceded fact that seven hundred and twenty-nine votes for mayor had been placed in the box, and that only six hundred and fifty-two could be found therein, or upon the table, when the count was made. If the fraud committed was limited to an abstraction of the missing ballots, there would be no reason for rejecting the return. It would be incomplete in omitting to account for the full number of votes given for mayor, but it would relate, so far as any account was given of them, to votes actually cast by the electors. There is no proof that the fraud was committed by the inspectors or with their privity or consent, and the fact that votes had been fraudulently taken from the box or table would not alone justify the inference that a further or different fraud had been committed, or that the votes remaining and which were counted were not the genuine ballots of the electors. The return is the primary evidence of the result of an election, and I assent to the general principle stated by the counsel for the defendant, that the return is to stand unless *533 impeached, and is to be set aside or corrected only so far as it is shown to be erroneous. The proof that ballots had been fraudulently abstracted did hot deprive the defendant of the benefit of the return, and, unless additional proof was given which would have authorized the jury to reject and" disregard it, the defendant’s title under the certificate of election was not overthrown; for conceding the particular fraud in taking ballots from the box, the number of the remaining ballots cast for him, as shown by the return, was sufficient to elect him. According to the return, he received in the southern district of the fourth ward four hundred and sixty votes, and, after crediting the relator with his majority in- the other parts of the city (146) and his vote in the southern district as counted (113) and the whole pf the missing ballots (77), Thacher’s plurality would be one hundred and twenty-four.
The greater part of the voluminous evidence given on the trial was directed to the question whether, in addition to the fraudulent abstraction of ballots, spurious votes had been placed in the box or upon the table, which were included in the count; and the rulings and charge of the court, as to the effect of this proof upon the return of the inspectors and upon the defendant’s title, raise the principal questions of law discussed upon the argument. Proof was given upon the part of the plaintiffs tending to show that two hundred votes were cast for the relator in the district in question, and one hundred and thirty-four votes for McCarty, making an aggregate of three hundred and thirty-four, which exceeds by one hundred and forty-two votes the number returned for them by the inspectors. It was conceded by the judge On the trial that the evidence would have warranted the jury in finding that the relator and McCarty together received three hundred and thirty-four votes, and, for the purposes of this case, the fact must be deemed to have been established. As the whole number of votes cast at the election was seven hundred and twenty-nine, if all the ballots cast beyond the three hundred and thirty-four had been given for the defendant, his vote could not have exceeded three hundred and ninety-five. The *534 return, however, gives him four hundred and sixty votes, which is sixty-five in excess of any number which could have been given him by the electors. It follows, therefore, that, among the ballots upon the table, there were at least sixty-five spurious votes, which were counted and returned as genuine by the inspectors. . The proof on the part of the plaintiffs, if credited by the jury, rendered it certain that false ballots had been put into the box or upon the table, and that real ballots had been abstracted.
The judge, in his charge to the jury, instructed them that nothing but intentional fraud upon the part of the inspectors would justify them in entirely setting aside the return. The charge upon this point was, in my opinion, erroneous. The law prescribes the duties of returning officers, and the mode by which the results of elections shall1 be authenticated. But it regards the returns as presumptive evidence only of the facts 'contained in them. They may be impeached for error, and whether the error is that of the inspectors, or arises from the interference or illegal conduct or acts of third persons, is immaterial. The integrity of the returning officers is not necessarily involved in the inquiry as to the truth of the return. They may have been deceived and innocently induced to make a certificate false in fact. In this case there was proof of a double fraud; and when it appeared that ballots had been changed as well as abstracted, and that the count related as well to the substituted as the genuine ballots, the return was no longer entitled to be regarded. It was rendered wholly uncertain to what extent the fraudulent substitution had been carried, and it was not material whether the inspectors were privy to the fraud by which the uncertainty was occasioned. •
It cannot be assumed that only sixty-five fraudulent votes had been placed in the box or on the table. The extent of the fraud could only be ascertained by an inquiry as to the vote of all the electors who participated in this election. The fraud affirmatively proved rendered the return so uncer *535 tain and unreliable that it could not be used for any purpose, and its value as evidence was wholly destroyed.
It is urged by the counsel for the defendant that the evidence of voters who testified how they had voted ought not to have been received, on the ground that it was in contravention of the principle of the secret ballot. The secrecy of the ballot is said by Denio, J., in The People v. Pease, to be an important and valuable safeguard of the independence of the humble citizen against the influence of wealth and station. There can be but little danger that a voter will be disturbed or hampered in the exercise of the suffrage by the consideration that, in a judicial inquiry which may be prosecuted subsequent to the election to determine the title to office, he may be called upon to disclose for whom he had voted. The contingency that a disclosure may be necessary is so uncertain and remote that the contemplation of it cannot be supposed to influence the action of electors at the polls. The right to examine voters in an action in the nature of a quo warranto is in affirmance and vindication of the essential principle of the elective system, that the will of the majority of the qualified electors shall determine the right to an elective office. It is a sufficient answer in this case to the point suggested, that the testimony was given voluntarily and without objection on the trial.
We are also of opinion that the judge erred in refusing to charge the jury, in compliance with the request of the plaintiffs’ counsel, heretofore referred to, that if the return was rejected the jury could not presume, in the absence of proof, that the votes in the southern district of the fourth ward, not proved to have been given for the relator or McCarty, were cast for the defendant, and that they could only allow him such votes as the evidence in the case shows that he received. The request should have been granted. The ruling of the court in respect to it was in accordance with the view consistently adhered to by the judge throughout the trial, that the onus próbandi, in respect to the defendant’s title, was upon the plaintiffs. In this the learned judge was in *536 error. The defendant’s title was established in the first instance by the production of the return. If the return was rejected, then the defendant was bound to establish his title by other proof, and unless he did so the people were entitled to judgment against him. It could not be presumed, from the failure of the relator to account for the votes, beyond the number proved to have been given for himself and McCarty, that they were given for defendant. The failure to do so might prevent a recovery of the office by the relator, for the reason that all the remaining ballots may have been cast for the defendant, but it would not establish the defendant’s title for they may have been cast for the relator. The plaintiffs were not required, in order to defeat the defendant’s title, to go further in the first instance with the proof of the fraud than to overcome the force of the return, and cast the burden upon the defendant of showing by other proof that he received a majority of the votes cast at the election. In election cases, if the return is discredited, so that it is no longer evidence of the right of the party claiming under it, then the question who received the majority of the votes is to be ascertained by other legal proof. The vote of the district or precinct to which the return relates is not to be disregarded. The electors ought not to be disfranchised because no return is made or because it has been rendered valueless by the fraud or mistakes of others. If no election had been held in the southern district of the fourth ward, or it had been held at a place not legally designated and distant from the place appointed by law, or if the polls were closed before the time, so that there was no fair opportunity for the electors to vote, another question would be presented. In this case, if the - return was rejected, the parties were remitted to other proof to ascertain the result of the election in the disputed district. We are of opinion, for the reasons stated, that the order for a new trial was properly granted.
The defendant appealed to this court from the order granting a new trial. The right to appeal from such an order is given by section 11 of the Code; but the section declares *537 that such appeal shall not be “effectual for any purpose unless the notice of appeal contain the assent on the part of the appellant that if the order be affirmed judgment absolute shall be rendered against the appellant.” And the further direction is given that, if the Court of Appeals should determine that no error was committed in granting a new trial, “ they shall render judgment absolute upon the right of the appellant.” The notice of appeal contained an assent by the defendant in the language of the section. This is an action brought for a double purpose, viz.: to oust the defendant from the office of mayor and to establish the right of the relator to it. Final judgment against the appellant upon his right would not establish the relator’s; and if final judgment should be given against the defendant, according to the stipulation, it would determine the action and deprive the relator of the opportunity to establish in the court below the right to a judgment in his favor. We are of opinion that the authority to appeal from an order granting a new trial does not apply to this case. The section contemplates cases where final judgment can be given which shall dispose of the entire question in controversy. If the defendant in a case like this can of right appeal from the order granting a new trial, it would be in his power to prevent a recovery by the relator upon his title, although the right to have his claim determined in the action is expressly given. The public is interested in the question litigated. There has been no verdict for the relator. The defendant cannot by his stipulation give to the relator a light to the office. The court cannot render the final judgment contemplated in section eleven.
The appeal must be dismissed on the ground that the case is not one in which an appeal from an order granting a new trial can be taken to this court.
All concur; Church, Ch. J., concurring in result.
Appeal dismissed.