GEORGE W. BROWN et al. v. GEORGE RICKARD et al.

*Action to Recover Land — Grant — Exception — Boundaries — Entries— Construction.*

1. A grant to G. and E., conveying certain lands by definite metes and bounds, contained also these words: " Containing, in whole, 35,280 acres, 5.000 acres of which, being previously entered by citizens, is hereby reserved." Entry had been so previously made, definitely locating such reservation, and a grant thereon was subsequently made: *Held*, that the words "hereby reserved" have the effect of excepting the 5,000 acres from the grant, and mean that such land should be left to be granted to the citizens who had entered it.

2. In an action for the recovery of the possession of such lands, a part of which was known and designated as the "Stevely lands," the plaintiff claimed title under a deed from the Sheriff to land sold under execution against the "Estate Company." This corporation claimed under two deeds, each containing the following clause, describing the land conveyed to it: "The undivided shares of all the land remaining unsold and contained within the boundaries of the 30,080-acre tract granted by the State to G. and E.," etc. The *boundaries* in the grant referred to embraced 4,071 acres (the "Stevely lands") of the 5,000-acre exception—the *locus in quo:* *Held*, the exception in the grant applying to the boundaries as well as to the land itself, no part of the "Stevely lands" are conveyed in the deeds to the "Estate Company," and the plaintiffs acquired no interest in such lands by their purchase under execution.

This was a CIVIL ACTION, tried before *Merrimon, J.*, at Fall Term, 1890, of BURKE Superior Court.

The material facts agreed upon and submitted to the Court are, in substance, these:

The defendants are in possession of the land designated in the pleadings as the "Stevely lands." The State issued its grant, dated the 9th of December, 1795, to James Greenlee, William Erwin and James Erwin, for 30,080 acres of land, described by appropriate metes and bounds, and this grant

contained, in appropriate connection, a clause in these words: "Containing in the whole thirty-five thousand two hundred. and eighty acres, five thousand acres of which, being *previously entered* by citizens, is hereby reserved."

The land so granted was afterwards duly sold on the 28th day of July, 1882, by a trustee properly appointed and empowered to sell the same, and pass title thereto to Joshua Kidd, the purchaser.

Afterwards, on the 16th of August, 1884, said Kidd conveyed the fee in one undivided third of said land to the defendant William Battye.

Afterwards, on the 3d of January, 1885, he likewise conveyed another undivided third thereof to Christopher Robins and William Battye.

Afterwards, on the 16th of August, 1885, he likewise conveyed the other undivided third thereof to Christopher Robins.

On the 14th of April, 1885, the said Christopher Robins and his wife, and the said William Battye and his wife, likewise conveyed to Matthew Robins one undivided third of said land.

Afterwards, on the 27th of May, 1885, the said Christopher Robins and his wife likewise conveyed to the said Matthew Robins an undivided one-third of said land.

Afterwards, on the 3d of June, 1866, the said Mathew Robins and his wife likewise conveyed an undivided two-thirds of said land to "The North Carolina Estate Company (Limited)," a corporation, and this deed contained a clause, whereof the following is a copy—"hath bargained and sold, and by these presents doth bargain and sell and convey to the company, its successors and assigns, forever, the undivided two-third shares of all the land remaining unsold and contained within the boundary of the 30,080-acre tract of land granted by the State of North Carolina, in the year 1795, to James Greenlee, William and James Erwin, and

situate in Burke County, State of North Carolina. Said tract of land is more particularly and fully described in the original State grant, and in a deed of conveyance from G. P. Erwin to Joshua Kidd, dated July 28th, 1882   The tract joins, on the south, the Branson heirs," &c.

Afterwards, on the 4th of June, 1886, the defendant, the said William Battye and his wife, likewise conveyed to said company an undivided one-third of said land, and the deed of conveyance contained a clause in the same words just above recited.

Afterwards, on the 5th of March, 1889, a judgment creditor of said company, whose judgment was duly docketed, sued out an execution thereupon; and on the 6th of May, 1889, the said land was sold as the property of this company, and on the next day the Sheriff executed a deed therefor to the plaintiff G. W. Brown, the purchaser thereof. All the said deeds were duly proven and registered.

There was an *entry* of the land first above mentioned and designated as the "Stevely land" duly made on the 27th of May, 1795, before the said first mentioned grant was issued by the State, and the following is an exact copy of such entry:

"NORTH CAROLINA—Burke County.

May 27th, 1795.

"Then surveyed for William Tate and Andrew Baird five thousand one hundred and twenty acres of land on the waters of Henry's and Jacobs' rivers, beginning on a tall hickory on a ridge standing on a mass of earth thrown up by a tree's falling out of root, on or near Thomas Walker's line, and running east twenty poles, crossing Walker's Creek, whole distance two hundred and twenty-six poles to a small post-oak on a ridge on or near George Walker's line; then south thirty degrees east ninety-six poles, crossing canebrake

107—41

of Henry's river; then three hundred and thirty-two poles to a fork of the same, whole distance six hundred and forty poles to a poplar and locust, in a rich flat near a spring and near Jones' line; then south twenty degrees east nine hundred and sixty poles to stake; then west eight hundred and eighty poles to a stake; then north to the beginning."

And thereafter said land was conveyed by grant from the State to said Tate and Baird on the 8th July, 1796.

Of the land so entered and granted and designated as the "Stevely land," 4,071 acres are situate and lie within the boundary of the grant first above mentioned.

Before the several conveyances above mentioned to the said "The North Carolina Estate Company (Limited)," on the 1st day of June, 1885, a commissioner, duly appointed and empowered by decree in an action in the Superior Court of the county of Burke, sold the said "Stevely land," including that part thereof situate within the grant first above mentioned, and he executed a deed therefor to the defendants George Rickard, Christopher Robins, Matthew Robins and William Battye, the purchasers thereof, and afterwards, Matthew Robins, on the 4th of January, 1888, conveyed to the defendant William Conforth an undivided one-fourth of said land.

The plaintiffs contended that, even granting that the *exception* in the grant first above mentioned under which they claim mediately is valid, still and nevertheless, the two deeds, one executed by Matthew Robins and his wife, and the other by William Battye and his wife, to the said "The North Carolina Estate Company (Limited)," embraced and operated so as to convey to it the title in fee to 4,071 acres of the "Stevely land," so situate within the boundary of the first mentioned grant.

The Court declared its opinion to be that, "The calls in the grant from the State of North Carolina to James Green-

lee and James and William Erwin, constitute not alone the boundaries of the 30,080-acre tract, but include 4,071 acres of the 'Stevely land.' The exception in the grant applies to the boundary as well as to the land itself; so that 'an undivided two-thirds share of all the land remaining unsold and contained within the boundary of the 30,080-acre tract' does not include any part of, or interest in, the 'Stevely land.'

"Therefore, the Court is of opinion, without considering any of the evidence objected to by the plaintiffs, that the plaintiffs acquired no title to, or interest in, the 'Stevely land' by the deeds of Matthew Robins and wife and William Battye and wife, mentioned in paragraphs 9 and 10 of the case agreed, and are not the owners of said 'Stevely land,' nor entitled to the possession thereof," and gave judgment accordingly for the defendant. The plaintiffs excepted, and appealed to this Court.

*Mr. S. J. Ervin* (by brief), for plaintiffs.
*Mr. T. J. Perkins* (by brief), for defendant.

MERRIMON, C. J.: The purpose to except from the older grant mentioned some part of the land within its boundary is manifest. The exceptive provision of that grant is found therein in immediate connection with the detailed description of the land granted by metes and boundaries, and is in these words: "Containing in the whole 35,280 acres, 5,000 acres of which, being previously entered by citizens, is hereby reserved." The words "hereby reserved" can have no other reasonable meaning or purpose than that the five thousand acres referred to, having theretofore been entered, were excepted from the grant—were not granted by it—that land was left to be subsequently granted to the persons who had entered the same. If it had turned out that, in fact, no previous entry of the excepted land had been made, the exception would

have been void for uncertainty, and all the land within the boundary would have passed by the grant. But it appears that such previous entry had been made, locating and describing the lands particularly and definitely by metes and bounds. The exception had reference to the previous entry—the latter gave the former certainty and definiteness, rendered it operative, just as if the land excepted had been described in the grant by location, metes and bounds. This exception had such reference to the entry, and must be taken in connection with it and the subsequent grant based upon it. So that, in this case, the older grant does not, and cannot, embrace the land so excepted. As the Court below aptly said: "The exception in the grant applies to the boundary as well as to the land itself." This must be so, because the location and boundary had been established by the definite entry and the subsequent grant thereupon. *Waugh* v. *Richardson*, 8 Ired., 470; *McCormick* v. *Monroe*, 1 Jones, 13; *Melton* v. *Monday*, 64 N. C., 295, throw light in this connection on the subject of void and valid exceptions in grants.

It is contended by the appellants that the *mesne* conveyance from Matthew Robins and his wife and that from William Battye and his wife to "The North Carolina Estate Company (Limited)," conveyed to the latter not simply the unsold lands embraced by the grant of older date mentioned, but as well and as certainly, also, so much of the land embraced by the grant of subsequent date mentioned as is situate within the boundary of the older grant, and within the exception to which reference has been made. We cannot so decide. The two conveyances, just above referred to, plainly and certainly refer to, and only to, and intend to convey, "all the land remaining unsold and contained within the boundary of the 30,080-acre tract of land granted," &c. Express and careful reference is made in both of them to the older grant; like particular and careful reference, for the

purpose of description of the land conveyed, is also made to the boundary of the grant, but not to the full boundary of it—the boundary is limited, so as to exclude the land excepted from the grant, and to exclude all purpose to convey any interest therein. Else, why so limit the boundary? Why such studied particularity of description? If the purpose was to embrace the land excepted, why did the parties fail to specify "the boundary of the 35,080 acres granted?"

It is insisted, however, for the appellants that the boundary referred to in these conveyances is that particularly specified in the older grant, and that this embraces the exception therein, and designated in the pleadings as the "Stevely land," and, therefore, this land is embraced by the description, "all the land remaining unsold and contained within that boundary." But what was that boundary, as intended and made by the grant? It did not consist necessarily and merely of the external metes and bounds of the grant—it embraced, as well, its internal metes, bounds and limits, and hence it embraced also the location, the metes and bounds of the land excepted from the grant—the "Stevely land." It had such internal boundary. The grant referred to the excepted land—the entry thereof—its metes and bounds, and these became a part of its own boundary, as much as if the same had been specifically set forth in the grant itself. Hence, "all the land remaining unsold, and contained within the boundary of," &c., implies the boundary including that that excludes the exception, that embraced the "Stevely land." Such is the meaning of the terms and phraseology employed in the conveyances referred to, and such was the clear intent of the parties to the same.

Judgment affirmed.