DILL-CRAMER-TRUITT CORPORATION AND M. L. PARKER v. JACKSON-VILLE LUMBER COMPANY, CHARLES M. WARNER, AND C. C. CODDINGTON.

(Filed 2 June, 1922.)

1. **Deeds and Conveyances—General Description—Boundaries—Plantation—Intent.**

Where the title to lands in dispute is dependent upon the description thereof in a deed given by the sheriff to the defendant under execution sale, wherein he described the lands as a certain plantation, which is shown to have been well known, with established boundaries, with an attempted but erroneous specific description in part as to adjoining boundaries, the intent of the grantor to convey the plantation by its established boundaries as gathered from the whole instrument will prevail over the inaccurate or attempted more definite description, which construed alone would be insufficient to convey any lands within the contemplation of the parties.

**2. Same—Reference—Appeal and Error.**

Where the action involving title to lands depends upon the intent of a grantor in a deed as to the identity of the lands described, and by consent of the parties has been referred and upon sufficient supporting evidence, the referee has found the intent to have been to convey a certain and known plantation with definite boundaries, and such finding has been adopted by the trial judge, the fact so established will not be disturbed on appeal.

**3. Same—Decisions—Opinions.**

The rule that the courts will adopt a more particular or specific description in a deed to lands, as being more certain and reliable than a more general one, has no application when it is shown that the more particular description is so manifestly erroneous, and is so in conflict with the more general one, and so indefinite and inadequate that it will not fit the description of the land clearly intended to be conveyed, and the general description is alone sufficient and definite for the purpose.

**4. Same—Execution—Sheriff's Deed.**

A sheriff's deed to land sold under execution of a judgment described the lands as Town Point Plantation, and gave particular boundaries that were incomplete and inaccurate: *Held*, it was competent to show that the plantation was well known in the community under definite bounds as designated, that the execution had been issued and the sale advertised and made of this particular tract of land, and these facts being established, the attempted and ineffectual part description by certain boundaries should be disregarded in ascertaining the land actually conveyed by the sheriff's deed.

**5. Appeal and Error—Reference—Consent Reference—Findings—Issues —Trial by Jury—Waiver.**

Where, under a consent reference, the parties waived their right to a trial by jury of the facts at issue, and one of them claimed title to the *locus in quo* by adverse possession, a finding by the referee, as a fact, upon supporting evidence confirmed by the court, that there has not been such possession, eliminates this question on appeal.

APPEAL by plaintiff from *Devin, J.,* at the October Term, 1921, of ONSLOW.

This action was brought to recover a tract of land containing seventy-two acres, more or less, which is described in the amended complaint, and the timber thereon, the plaintiffs alleging that the plaintiff M. L. Parker is the owner of the said land, and the Dill-Cramer-Truitt Corporation is the owner of the timber on the same.

The defendants answered and denied the ownership by plaintiffs, as alleged, of the land or the timber thereon. It appears that the admitted source of title on both sides was William S. Hill, who formerly owned the disputed land, and who conveyed it, by good and sufficient deed, dated 30 November, 1827, and duly registered, to Edward Ward, who died, leaving a last will and testament, dated 12 August, 1834, in and by which

he devised the said tract of land to his sister, Fanny Mumford, for and during her life, and at her death to his nephew, Edward M. Mumford. That Fanny Mumford died, and Edward M. Mumford then became seized and possessed in fee simple of the said tract of land. The defendants allege, in this connection, and in answer to the plaintiffs' allegations in this respect, that while Edward M. Mumford was thus the owner of the tract of land, a judgment was duly rendered against him in the Superior Court of Onslow County, and an execution was duly and regularly issued against him, to the sheriff of said county, one E. Murrill, who duly and regularly levied the same upon the lands devised by Edward Ward to Edward M. Mumford, and after due advertisement the said sheriff sold said land as provided by law on 1 May, 1869, conveyed the same, as sheriff, by deed to L. W. Humphrey and E. S. Parker, as appears by the registry of the said deed, "and that the said Humphrey and Parker did at once take possession of the same thereunder, and did exercise and use said possession under and by virtue of the said deed up to all the boundaries thereof as set out in the aforesaid deed from Hill to Ward, and that thereafter E. S. Parker and wife conveyed to L. W. Humphrey all their right, title, and interest in the above described Hill-Ward lands, and that L. W. Humphrey did thereafter, to wit, on 17 March, 1870, convey all of the land (which is described in the deed from William S. Hill to Edward Ward) to one R. W. Ward, and by *mesne* conveyances these defendants are now the owners of all the interest of the aforesaid parties in and to the above described lands, as well as the other lands described in deeds from other parties, all of which together comprise the lands known as the 'Town Point Plantation,' and conveyed by the defendant Charles M. Warner to the defendant C. C. Coddington, and the defendants, according to their respective rights among themselves, are the absolute owners in fee simple thereof."

Plaintiffs allege that while Edward M. Mumford was the owner of the land devised to them, he conveyed twenty (20) acres of the land to Reuben Everitt by the following description: "The certain tract or parcel of land lying and being in the county of Onslow, bounded on the west side by Lewis Creek, and entirely surrounded on all other sides by the lands of the said party of the second part, known as the Everett land, the aforesaid parcel of land being near the Montfort mill seat, containing 20 acres, more or less." That by mistake of the draftsman the word "west" was inserted for "east," and that the description of the 20 acres should read as follows: "The certain tract or parcel of land lying and being in the county of Onslow, bounded on the *east* side by Lewis Creek, and entirely surrounded on all other sides by the lands of the said party of the second part, known as the Everett land, the aforesaid parcel of land being near the Montfort mill seat, containing 20 acres, more or less."

The description in the sheriff's deed to Humphrey and Parker is as follows: "Bounded on the north by New River, on the west by Lewis Creek, then following calls for certain adjoining lands, containing 1,300 acres, more or less, and known as 'Town Point Plantation.'"

The case was referred to Hon. E. K. Bryan, and the referee made his report to the court, in which he stated separately his findings of fact and conclusions of law, and without now stating what they were, we may say generally that he concluded, and so reported, that the plaintiffs were not entitled to recover, but that defendants are the owners of the land in dispute between them. The judge, upon exceptions by plaintiffs, approved and confirmed the referee's findings of fact and conclusions of law.

Among other things, the referee found:

1. That the description contained in the deed from Reuben Everett to John Shepard, heretofore referred to, did not convey to John Shepard the 72 acres in dispute in this action, and that the parties intended the lines of "Town Point Plantation," as shown on the map hereto attached,

from 11 to 13, to 10, to 14, to 15, to 16, to 17, to 18, to 19, to 7, thence to 6, as the bounds of the deed from Reuben Everett to John Shepard, which said line is the line of the "Town Point Plantation" referred to in said deed; and, therefore, the deed from Reuben Everett to John Shepard did not convey to John Shepard the 72 acres in dispute in this action. That the plaintiffs assert title to the land and timber respectively claimed by them, through *mesne* conveyance and inheritance from the said John Shepard. One of the boundaries of said land, pertaining to this case, being "on the east and south by Lewis Creek and the land known as the 'Town Point Plantation,' formerly the property of E. W. Mumford."

2. That "Town Point Plantation," at the date of the judgments, levy, advertisement, and sale by the said Elijah Murrill, sheriff, and at the time he executed and delivered the deed to Humphrey and Parker, was a well known tract of land, and consisted of the lands within the bounds described in the deed from William S. Hill to Edward Ward offered in evidence, and that the lines, as called for in that deed, were the lines and boundaries of "Town Point Plantation," and were known as such, and that said description is a specific description by metes and bounds and courses and distances, and that "Town Point Plantation" included within its bounds the lands in dispute in this action. And again, the referee found that the said sheriff levied said execution upon "Town Point Plantation," and one house and lot in Jacksonville, N. C., and under due process advertised and sold "Town Point Plantation." The judgment roll and entries were made part of the findings, the same as if fully set forth therein.

3. That the deed from Elijah Murrill, sheriff, to Humphrey and Parker was made by the sheriff in pursuance to judgments lawfully and legally obtained by the plaintiffs against the defendants mentioned therein, and that executions were duly issued to the sheriff upon said judgments, and in accordance with law and the command contained in said executions and the *venditioni exponas,* the sheriff levied upon, advertised, and sold the lands comprising "Town Point Plantation," and made the deed heretofore mentioned. He also found from the evidence, which reveals just what lands constitute "Town Point Plantation," it was the intent and purpose of said sheriff in making said deed to the purchaser, and in making his levy and sale to sell and convey to the purchasers all of the lands constituting "Town Point Plantation," and that if, as a matter of law, the call for Lewis Creek as the western boundary in said deed does not of necessity make the creek entirely the western and northwestern boundary of the land conveyed, then "Town Point Plantation" is, and was intended as, the controlling description, and is quite definite, and said deed conveyed to the said Humphrey and

Parker all of "Town Point Plantation," and conveyed to said purchasers the legal title to the land in dispute by the courses mentioned in the Hill deed to Ward from .... to 12, to 11, to 13, to 10, to 14, to 15, to 16, to 17, to 18, to 19, to 7, to 6 on the map.

4. Besides being found as a fact by the referee, it was admitted by plaintiffs, as reported by him, that "Town Point Plantation" included the disputed land or *locus in quo.*

There are many other findings of the referee, and conclusions stated by him, which need not be stated.

The court having confirmed the report, entered judgment for defendants, and plaintiffs excepted thereto and appealed.

*Duffy & Day and Rountree & Davis for plaintiffs.*
*I. M. Bailey and McLean, Varser, McLean & Stacy for defendants.*

WALKER, J. This case is not like many of its kind to be found in the books, where the trials were by jury. The cause was referred, by consent of the parties, to a referee, who definitely found the facts and stated his conclusions of law therefrom, his decision being for the defendants, which was adopted and confirmed by the judge upon exceptions thereto, and judgment given for the defendants.

If we are to be governed at all in our decision of this case by the referee's findings of fact, which are binding upon us, there being evidence, as there is here, to support them (*Bailey v. Hopkins,* 152 N. C., 748), it is manifest that the sheriff's deed was intended to convey to the purchaser at the execution sale all of the "Town Point Plantation," it having distinct and clearly defined boundaries, and being a tract of land which was well known to the people who lived in the section where it was situated, and it is further evident that the other calls in the deed for adjoiners, if so it may be termed, was an erroneous one, and that the deed will not have any effect, unless the description of the land conveyed as the "Town Point Plantation" is permitted to prevail over the other and mistaken one. A similar question was presented and considered in *Quelch v. Futch,* 172 N. C., 316, where, at p. 317, the Court said: "We have in the deed in question a description by metes and bounds in which the land in controversy is not conveyed, and also a description which refers to another deed duly recorded by book and page, which gives a definite description covering the land in controversy. It must be admitted that if the first or specific description entirely is eliminated from the deed, according to the evidence, the second or general description is sufficient, and covers the land described in the complaint. It matters not that the last description follows the warranty. The whole deed must be so construed as to give effect to the plain intent of the

grantor, and the parts of the deed will be transposed if necessary. *Trip-lett v. Williams,* 149 N. C., 394; 13 Cyc., 627. The entire description in a deed should be considered in determining the identity of the land conveyed. Clauses inserted in a deed should be regarded as inserted for a purpose, and should be given a meaning that would aid the description. Every part of a deed ought, if possible, to take effect, and every word to operate. A reference to another deed may control a particular description, for the deed referred to for purposes of description becomes a part of the deed that calls for it. 13 Cyc., 632; *Brown v. Rickard,* 107 N. C., 639; *Everett v. Thomas,* 23 N. C., 252. The manifest intention of the grantor, Cronly, was to convey the whole of a tract of land, containing 700 acres, more or less, being the land conveyed to Cronly by Kirkwood, and by Williams to Kirkwood. It is in evidence that these deeds referred to cover the land in controversy. The fact that the metes and bounds of the preceding description do not cover it cannot be permitted to destroy the description that does cover it. From the language of the deed an intent to convey the entire tract is plainly manifest, and this intent will not be defeated because the grantor inserted metes and bounds that are erroneous and do not cover it. As the general description is added, not simply to set out the grantor's title, but to identify and further describe the tract of land conveyed, such general description will be given effect. The additional clause will be considered as added for the purpose of giving a more particular description," citing *Rutherford v. Lacy,* 48 Mo., 325; *Jackson v. Barringer,* 15 Johns (N. Y.), 471; *Lodge v. Lee,* 6 Cranch (U. S.), 237; 13 Cyc., p. 634, note 14. It is then pertinently added by the Court: "In the deed we have under consideration the second or general description is introduced, not solely to set out a chain of title, but evidently to identify, make certain, and describe the land conveyed. It is, in fact, an 'independent description of the land so conveyed,' and amply sufficient to support the deed, eliminating any other description."

And so we may say, with reference to the deed now in question, the second description was intended, and is, an independent one, which was intended not merely to show the chain of title, but to identify and more certainly to describe the land conveyed. In this connection we may well refer to 5 Cyc., p. 881, where it is said: "When there are two descriptions in a deed, one of which describes the premises conveyed generally by number or name, and the other gives a particular description by metes and bounds, or courses and distances, which is erroneous, the latter will be rejected." The following cases are cited in the notes to support the text, and they appear clearly to do so: *Haley v. Amestory,* 44 Cal., 132; *Case v. Dexter,* 106 N. Y., 548, at 554; and we add *Slater v. Rawson,* 42 Mass. (1 Metcalf), 450, and *Rutherford v. Lacy,* 48 Mo.,

325. In the first of these cases, it is said: "But, however this may be, we are of the opinion that the ranch is well described by name, and that the particular description was not intended to be used in the sense of restriction. The language is: 'All the undivided two-thirds (⅔) of all the lands known by the name of Rancho de San Vicente, situate in the county of Los Angeles, and State of California, the lands of said ranch being known and described as follows.' This language indicates that the dominant idea in the mind of the grantor, when the deed was made, was of the Rancho of San Vicente as a whole, and not of the particular lines or marks by which it might be described." This being so, the deed must be held to convey two-thirds of the whole ranch, however erroneous may be the particular description, citing *Peck v. Mallams,* 10 N. Y., 532; *Stanley v. Green,* 12 Cal., 148. And in *Case v. Dexter, supra,* the Court, in discussing the same question, remarked: "This is not the case of cutting down an interest or estate, once clearly given, by subsequent indefinite or ambiguous language. All the language in the deed, to which we have referred, is a part of a single description, and the sole question is, What land is embraced therein?" In *Rutherford v. Lacy, supra,* the Court, after considering the question, illustrates it in this way: "If A. sells to B. his farm, and then goes on to describe the farm by course and distance, and there is a mistake or erroneous description, the whole farm will, nevertheless, pass; because, in the case supposed, it was the manifest intention, gathered from the deed itself, to convey the whole farm. Had the grantor (the plaintiff in this case), in his deed, used any apt or appropriate words showing that it was not his intention to convey the whole lot, we should give them effect without regard to any mere verbal arrangement or position they might occupy in the deed. But as it is, without overthrowing well established principles of law, we are not at liberty to construe the deed otherwise than as passing title to the whole lot." See, also, 5 Cyc., p. 880 (II); 13 *ibid.,* p. 634, and note 14; *Masten v. Olcott,* 101 N. Y., at p. 158. It was upon the principle of construction just stated, and some of the authorities cited, that the case of *Quelch v. Futch, supra,* was decided. That case was again before this Court, and is reported in 175 N. C., at p. 694. It approved and affirmed the former case. *Chief Justice Ruffin* said, in *Proctor v. Pool,* 15 N. C., at margin p. 375: "Attempts have been made to discover artificial rules for discovering the intention, and the offices of terms of general and particular description defined. The truth is, no positive rule can be laid down; for as each subject differs in some respects from another, and each writer will be more or less precise or perspicuous in expressing himself, the whole instrument is to be looked at, and the inquiry then made, Can it be found out, from this, what the party means? . . . But there seems to be no danger of mistaking the

DILL *v*. LUMBER CO.

intention of the parties, when a thing is given by a particular name, by which it is well known, or by any other description which completely identifies it, although another particular be added which does not apply, it is true, to the thing as before described, but is equally inapplicable to anything else. In such case the effect of the true description ought not to be weakened by a further and unnecessary description which is false. . . . Or, as mentioned in *Reddick v. Leggat,* 7 N. C., 543, if one grant White-acre (by name), which descended from his father, White-acre shall pass, though it descended from the mother; because it was sufficiently identified before." The general rule is, to be sure, that a particular description will control a general one, because the law prefers the best evidence as to the intention of the parties, and when properly considered, the particular description is more certain and reliable than the other one, and this rule may be preserved in its integrity without conflicting with the principle we apply here.

By the modern and prevailing doctrine, we are required to examine the entire instrument and ascertain the true intention of the parties, for that is what the law seeks to effectuate. *Kea v. Robeson,* 40 N. C., 373; *Gudger v. White,* 141 N. C., 507; *Triplett v. Williams,* 149 N. C., 394; *Rowland v. Rowland,* 93 N. C., 214; *Beacom v. Amos,* 161 N. C., 357.

There is, therefore, another view as to the proper construction of the sheriff's deed, which is conclusively shown by his official acts after he received the execution against Edward M. Mumford. The referee finds with great precision that the sheriff levied the execution upon the "Town Point Plantation," which was then owned by the defendant in the execution; and further, that he advertised and sold the same. Mr. Freeman, in his valuable treatise on Executions, says that any descriptive words which would be sufficient in a voluntary conveyance are equally adequate in a conveyance made by the sheriff or other officer. Furthermore, descriptive words which are inadequate in voluntary conveyances are not necessarily so in a sheriff's deed, because they may be made certain by its recitals and other writings which are thereby so referred to that they may be properly considered as a part of the deed for the purpose of making its descriptive language more perfect. Thus, such a conveyance is ordinarily preceded by a levy and advertisement of sale, and often by a certificate of purchase, some or all of which are referred to in the deed. Hence, in addition to the words used for the purpose of description, it usually appears from the recitals that the land intended to be conveyed is that levied upon under a writ designated, and is that land which, at a time named, was advertised for sale, and afterward sold, and, though the descriptive words in the deed may be inadequate, or, in some respects, erroneous, such inadequacy may be made adequate or such error corrected by reference to the officer's return of his levy, or his

notice of sale, or to that part of his return stating the property sold, and the person by whom it was purchased. In either event, we think the description must be regarded as sufficient to divest the title of the judgment debtor if all doubt is removed by incorporating in it the information derived from these various writings, all of which merely constitute successive steps in a proceeding of which the deed is but the last. 1 Freeman on Executions (3 ed.), pp. 1914 and 1915. And he further says: "It is by no means essential that, from a mere inspection of the description, the court should be enabled to know what lands are intended. The tract may be designated by some name not understood by the court, but perfectly familiar to all persons acquainted with the neighborhood in which the land is situated. Evidence may always be received to show the signification of such a name, or to show that any other descriptive words, though apparently meaningless or uncertain, do in fact designate a particular tract in such a manner that its identity would be apparent to all persons to whom it is familiar."

In this case it is expressly found as facts that the sheriff levied the execution upon the "Town Point Plantation"; that he advertised it for sale, and sold it, by that name, it being a well known tract of land in the particular section where it is situated. If not knowing its precise boundaries, he attempted to describe them and failed to do so, the description by its name will be sufficient, otherwise the deed would be ineffectual to convey the land "levied upon, advertised, and sold by the sheriff," as found by the referee *(falsa demonstratio non nocet)*. "Addition of false or mistaken descriptions in a deed will not frustrate the grant if there are others sufficiently clear to identify the thing intended to be granted." *Doe v. Jackson,* 1 S. & M., 494. See, also, *Sherwood v. Whiting,* 54 Conn., 330, where the subject is fully discussed with a copious reference to the pertinent authorities. And in *Slater v. Breese,* 36 Mich., 71, at p. 80, it is said by the Court: "It is not essential to the validity of a grant that the property should be so described as to avoid the necessity of an appeal to extrinsic proofs to apply the grant to the property. The subject-matter must undoubtedly be so ear-marked in the grant as to be capable of being distinguished from other things of the same kind. But it is always competent to fix and identify by extrinsic proof the natural monuments and other badges of identity and connect the description in the deed with the material subject-matter dealt with by it. The property to be granted may have a particular name by reputation, and if so, it may be described by such name, without giving monuments, boundaries, or the like; and outside evidence may be resorted to, to apply the name to that which it signifies. Indeed, the instances are rare in which no help whatever is required. If the means are given in the grant, either by a name of notoriety or by specified

monuments and other definite particulars, to identify the thing meant to be granted, with the aid of outside examination and proof to fix and determine the (identity of the) name with the thing, the description is *prima facie* sufficient. And omitting to name the state, county, and township will not prejudice where other adequate elements of identification exist.

"It is also well settled that if there are descriptive signs satisfactorily ascertained which designate the thing meant to be granted, the addition of circumstances or accompaniments which are untrue will not defeat the grant. They may be rejected. This principle is confirmed and its application illustrated in numerous cases. Now, it is quite plain that the descriptive part of complainant's mortgage has some inaccuracies, but it is equally plain that the terms of the description, when taken together, are abundantly sufficient, with such aids as are admissible, to identify the land." This case refers to many authorities in support of the principle.

It was said by *Justice Ashe,* in *Credle v. Hays,* 88 N. C., at p. 324: "In our case the intent of the parties to the deed from the sheriff to Tilson Credle to convey the land owned by B. F. Credle (the defendant in the execution under which it was sold) manifestly appears from the deed itself; and if the calls of courses in the deed should be held to be the true boundary of the land conveyed, the intent of the parties would be entirely disappointed," because, as he adds, the deed, if read according to the calls, does not cover the land evidently intended to be conveyed, and therefore would be ineffectual, and that would be the result in this case, unless the other description, "Town Point Plantation," is taken to be the true and controlling description (*Quelch v. Futch, supra*), it having been found by the referee to be not only an accurate one, but also that the tract of land thus described is in itself well known to those living in the community or locality, where it is situated, and has well defined lines and boundaries. See *Lodge, Lessee, v. Lee, supra,* where only part of the island was described by definite calls, when *all* of it was intended to pass to the grantee. *Rutherford v. Lacy,* 48 Mo., 425; *Jackson v. Barringer,* 15 Johnson, 471; 13 Cyc., p. 634, note 14.

Before closing, we should call attention to the fact that in *Ferguson v. Fibre Co.,* 182 N. C., 731, we have recently considered the question as to specific and general descriptions in deeds, and other instruments, citing and commenting upon *Quelch v. Futch, supra,* though one of the descriptions in the *Ferguson case, supra,* was by metes and bounds and the other so to a certain extent. But the case has some bearing upon this one, and illustrates the principle that the law seeks for the intention of the parties, and will enforce it when it can be ascertained, and especially so when it is manifest.

The defendants contend that there are other difficulties for the plaintiffs to overcome before they can establish a title to the land or timber, but it is unnecessary to consider them, the decision of the question as to the sheriff's deed being sufficient to settle the controversy.

The reference having been by consent of the parties, the plaintiffs were not entitled to have issues submitted to the jury.

We have not discussed the question of adverse possession, as that was settled by the finding that there had been none, the title to the land having been continuously in dispute.

We find no error in the record, and therefore sustain the judgment.
Affirmed.