## STATE v. ED. STEWART.

### (Filed 11 October, 1911.)

**1. Manslaughter—Evidence Sufficient—Competency.**

Evidence in this case held competent and sufficient for conviction of manslaughter, at least, which tended to show that a teacher at a negro school violently assaulted his pupil, sixteen or seventeen years old, with a stick of lightwood about two feet long, the size of witness's arm, by striking him several times on the head, stunning him and causing him to stagger around like a drunken person; that he went to the door bleeding at the nose and told the prisoner he thought he had no right to beat him so much; that the pupil did not offer to hit the teacher; that the pupil had lived with a witness, his aunt, for five years, and that morning about 11 o'clock he went home, walking fast, his head thrown back, crying, his nose bleeding, and he staggered about the room, lying at intervals upon the bed; that he was taken to a doctor about five miles away, and when witness saw him next, in about two hours, he was lying on the floor of a neighboring store, nearly dead; and by an expert physician that he made a *post-mortem* examination, and that deceased died from cerebral hemorrhage, caused presumably by a blow or fall.

**2. Objections and Exceptions—Evidence, Competent in Part.**

When some of the testimony of a witness is competent and some is not, a general objection to the whole will not be sustained.

**3. Witness, Expert—Physician—Opinion from Observation.**

An expert who has made a *post-mortem* examination of the deceased, whom the prisoner is accused of having murdered, may express his opinion as to the cause of the death without having a hypothetical question propounded to him, as his opinion is not based on the evidence of other witnesses.

**4. Witness, Expert—Opinion—Hypothetical Question—Statement of Facts—Part Statement—Objections and Exceptions.**

In hypothetical questions asked an expert witness, a physician, as to the cause of the death of one whom the prisoner is accused of having murdered, upon the assumption that the jury found certain facts, in evidence, to be true, it is not necessary that all the facts should be stated; and if the party objecting thinks that an omitted fact would have elicited a different opinion from the witness, he should have incorporated it in his questions on cross-examination.

5. **Witnesses—Competency—Findings of Court—Objections and Exceptions.**

The trial judge, upon questioning an eight-year-old witness introduced by a party litigant, ascertained that the witness did not know who made her, had no knowledge of the obligation of an oath, and did not know what they would do with her if she told a lie on the witness stand, and found that she was not qualified to testify. No objection was made to this in the trial court: *Held*, (1) objection on appeal is too late; (2) the evidence sustained the ruling of the court.

APPEAL from *Peebles, J.*, at February Term, 1911, of SAMPSON.

The defendant is charged in the indictment with the crime of murder, and was convicted of manslaughter.

Cleveland Bronson, a witness for the State, gave the following account of the killing, which was corroborated by several witnesses: "The prisoner was teaching school at the colored Herring Schoolhouse in Lisbon Township. I was passing by there at the morning recess. It was raining when I got there. I was hunting and had my gun, and I set my gun down at the schoolhouse door; this was about the 26th of last January. The scholars were out of school at that time. I went in the schoolroom and was talking with the defendant. He soon rang his bell for the scholars to come in again. After they had all come in and taken their places, he asked Bishop Wright, the deceased, why he did not march out right at recess. Bishop Wright said he thought he did march out like he had been marching out before. The teacher told him no, he did not; that he turned off at one side, when the rule was that he should march straight in front of the door far enough for all the other scholars to clear the steps. Then the prisoner asked deceased: 'Are you too grown-up to obey orders?' Deceased said: 'No, I am not; I came here to obey orders.' The prisoner then said: 'Obey my orders, or I will beat you down to the floor.' The teacher then ordered Bishop to come out to him. The teacher then ran into Bishop and threw him on the floor; they tusseled a while, and the teacher reached and got a piece of lightwood about the size of my arm and about 2 feet long, and hit deceased with it two or three licks on the head and got up off him.

Bishop Wright went to pull up by side of house and the teacher struck him again with the piece of lightwood on the side of the head. He stood a few minutes like he was stunned. He trembled just like when you hit a hog, and was bleeding at the nose."

Defendant objects. Objection overruled, and defendant excepted. First exception.

"Bishop staggered around in schoolhouse like drunken person; he staggered up against stove and chairs in the room."

Defendant objects. Objection overruled. Defendant excepted. Second exception.

"Bishop Wright went out the door bleeding at the nose, and told the teacher that he did not think he had the right to beat him up that way."

Defendant objects. Objection overruled. Defendant excepted. Third exception.

"Bishop Wright was about sixteen or seventeen years old; he did not hit or offer to hit the teacher during the fight."

Victoria Herring testified as follows: "I am sister-in-law to Bishop Wright. Bishop's mother was dead and he lived with us since he was five years old. About 11 o'clock A. M., Bishop Wright came home, walking fast, head thrown back; he was crying and his nose was bleeding and he staggered about the room and lay down on the bed; he was first up and then down."

Defendant objected; overruled, and defendant excepted. Fifth exception.

"He stayed about a half hour. He lived with my husband and myself. My husband soon came home and hooked up a horse and buggy and took him off. The doctor lived about five miles. I saw him next at D. L. Herring's store, about two hours afterwards, about two miles from my house, lying down on the floor, kinder struggling. He was nearly dead."

Defendant objected; overruled and excepted. Sixth exception.

"Three or 4 o'clock he died."

Dr. Cooper, who was found by the court to be an expert, stated that he made the *post-mortem* examination of the de-

·ceased, and that he died from cerebral hemorrhage—effusion ·of blood on the brain. The defendant excepted. Caused presumably by a blow or fall. The defendant excepted.

The defendant testified in his own behalf, and his Honor told the jury, if they believed him, to return a verdict of not guilty.

*Attorney-General Bickett and Assistant Attorney-General George L. Jones for the State.*

*J. D. Kerr and Fowler & Crumpler for defendant.*

ALLEN, J. We have examined all of the exceptions appearing in the record, and find nothing of which the defendant can justly complain.

It appears to us that he has been dealt with mercifully, as the evidence would have sustained a verdict of murder in the second degree, if not one in the first degree.

Many of the exceptions were evidently taken as matter of precaution, during the progress of the trial, and not with the expectation that they could be successfully urged as ground for a new trial.

The first three exceptions belong to this class, as the witness had to tell what took place at the time of the difficulty, if permitted to testify at all.

The exception to the evidence of McKinley Herring is equally untenable. He was an eye-witness, and the objection is to the whole of his evidence. We do not think any part of his evidence incompetent; but if it were otherwise, and some of the evidence was competent, and some not, a general objection to the whole evidence could not be sustained. *S. v. Ledford,* 133 N. C., 722.

The exceptions to the evidence of Victoria Wright are without merit, and requires no discussion.

It was not necessary to propound a hypothetical question to Dr. Cooper, as he was expressing an opinion as the result of his own examination, and not one based on the evidence of other witnesses.

Dr. Sloan, an expert, was asked his opinion as to the cause of death, upon the assumption that the jury found certain facts in evidence to be true.

The defendant objected because one fact, as to which there was evidence, was not incorporated in the question.

We said at the last term, in *S. v. Holly,* 155 N. C., 485: "It is not necessary in the statement of a hypothetical question that all the facts should be stated. Opinions may be asked for upon different combinations of facts, on the examination in chief and on the cross-examination."

If the defendant thought the fact, which was omitted, would have elicited a different opinion from the witness, it was his right and duty to incorporate it in a question on cross-examination.

The defendant offered Mattie Andrews, a girl eight years old, as a witness. The court refused to permit her to testify, and makes the following statement as to the witness: "The exception in regard to Mattie Andrews was made the first time in the statement of appellant's case on appeal. The court asked Mattie Andrews who made her; she said she did not know. The court asked her if she knew anything about the obligation of an oath. She said no. The court then asked her what they would do to her if she told a lie on the witness stand. She said she did not know. The court found as a fact that she was not qualified as a witness, and stood her aside. No exception taken at the time and no statement made to the court as to what they expected to prove by the witness."

We cannot go outside the case on appeal, and as no exception was taken, we cannot consider the objection. Besides, the evidence sustained the findings and ruling of the court.

It was discretionary with the judge to allow or to refuse further examination of the witnesses.

The prayers for instruction were substantially given.

We find

No error.