ADA G. LOVE AND JEFFREY L. LOVE v. ROBERT HARVEY PRESSLEY

No. 7626DC1005

(Filed 7 December 1977)

1. **Judges § 5— similar earlier case before judge—no bias—recusation unnecessary**

    There was no showing of bias in this case which would have required recusation of the trial judge where the only evidence to support defendant's motion for the case to be heard by another judge was that the trial judge had made findings of fact adverse to defendant in an earlier case involving similar issues.

2. **Evidence § 19; Trespass § 6— "clean-up" of plaintiff's premises—questions about prior "clean-ups"—admissibility of evidence**

    In an action for damages arising from alleged trespass and conversion, breach of covenant of quiet enjoyment, and mental suffering where plaintiffs alleged that they rented a house from defendant, gave notice that they were moving out of the house, after four days absence went into the house to remove the feme plaintiff's belongings, discovered they were missing, and were told that the "clean-up" man had already been to the house, the trial court did not err in allowing plaintiffs to question defendant and his "clean-up" man with respect to incidents involving defendant and tenants other than plaintiffs, since the evidence was admissible to impeach defendant's denial that he or his employee acting within the scope of his employment "cleaned-up" the personal possessions of the plaintiffs, and since the evidence which indicated the scope of "clean-up" on other occasions was competent as circumstantial evidence to indicate the scope of "clean-up" in the instant case.

3. **Rules of Civil Procedure § 50— motion for directed verdict—specific grounds—necessity for stating**

    G.S. 1A-1, Rule 50(a) requires that a motion for directed verdict state specific grounds; this provision is mandatory, and, upon failure to state specific grounds, an appellant cannot question on appeal the insufficiency of the evidence to support the verdict.

4. **Trespass § 7; Landlord and Tenant § 6.2; Trover and Conversion § 2— landlord's unauthorized entry into leased premises—conversion of personal property—sufficiency of evidence**

    In an action for damages arising from alleged trespass and conversion, breach of covenant of quiet enjoyment, and mental suffering, plaintiffs' evidence that they were lawfully occupying premises rented to them by defendant and that defendant or his employee removed plaintiff's personal property from the premises was sufficient to be submitted to the jury where such evidence tended to show that plaintiffs had paid a deposit and the first week's rent on the premises and had received a key; defendant did not evict plaintiffs from the premises pursuant to any court action or judicial process; defendant closely watched his rental properties and, upon determining that a unit had been vacated by a tenant, would give his maintenance man a key for the pur-

pose of cleaning up the unit so that it could be rented again; on some occasions "clean-up" had included removal of personal property belonging to tenants without their prior approval; plaintiffs returned to their rented premises after a four day absence to find that feme plaintiff's belongings were missing; and plaintiffs were told by defendant's rental agent "that the clean-up man had been there."

5. **Trial § 38— requested instructions not given verbatim—no error**

The trial court was not required to give verbatim defendant's requested instruction defining "the greater weight of the evidence."

6. **Appeal and Error § 45.1— failure to argue question in brief—no appellate review**

App. R. 28(a) requires that a question be presented *and argued* in the brief in order to obtain appellate review.

7. **Principal and Agent § 9— agent's actions directed by principal—respondeat superior—jury instructions proper**

Defendant's contention that the trial court erred in failing to distinguish between defendant's and his agent's alleged conversion of plaintiffs' property in the issues submitted to the jury is without merit, since there was no evidence in the record to indicate that defendant's agent had any access to the premises rented by plaintiffs other than under the directions of defendant, and the trial court properly charged the jury with respect to the doctrine of respondeat superior.

8. **Trial § 33— jury instructions—recapitulation of evidence—unequal time given to parties' evidence—no error**

Where one party presents substantially more evidence than the other, it is not error for the court's recapitulation of the first party's evidence to be longer than the recapitulation of the second party's evidence.

9. **Unfair Competition—unfair trade practices—rental of residential housing**

The rental of residential housing is "trade or commerce" within the meaning of former G.S. 75-1.1 declaring unfair trade practices unlawful.

10. **Unfair Competition—rented premises—conversion of personal property—unfair trade practices—treble damages proper**

Where the jury properly found that defendant or his agent trespassed upon premises rented to plaintiffs and converted the personal property of the feme plaintiff, the trial court properly concluded that defendant's conduct constituted unfair or deceptive acts or practices in commerce contrary to the provisions of G.S. 75-1.1 and plaintiffs were entitled to treble damages.

APPEAL by defendant from *Hicks, Judge.* Judgment entered 18 May 1976 in District Court, MECKLENBURG County. Heard in the Court of Appeals 31 August 1977.

This is an action for damages arising from alleged trespass and conversion, breach of covenant of quiet enjoyment, and men-

Love v. Pressley

tal suffering. Plaintiffs also alleged that defendant's conduct constituted unfair trade practices under G.S. 75-1.1 entitling them to treble damages.

At the time this lawsuit was instituted, the defendant owned and rented to others about 76 rental units in the City of Charlotte, North Carolina. On 7 December 1974, plaintiffs paid a deposit to Mrs. Betty Soloman, defendant's rental agent, and subsequently moved into a house at 3118 Cosby Place. On 16 December 1974, the plaintiffs had a personal quarrel. The femme plaintiff returned to her mother's home in Concord; her husband returned to Cosby Place the next day (17 December), removed his personal belongings, called Mrs. Soloman, and informed her that they (plaintiffs) were moving out of Cosby Place. On 19 December, the plaintiffs returned to Cosby Place and discovered that personal property belonging to the femme plaintiff was missing. Upon calling Mrs. Soloman, plaintiffs were informed that the clean-up man had been to Cosby Place and were given defendant's telephone number. They never were able to contact the defendant, and he did not return their phone calls.

It was stipulated that defendant did not evict plaintiffs from Cosby Place pursuant to any judicial action or process.

Further pertinent facts will be brought out in the discussion of the issues.

The jury returned verdicts of guilty and awarded damages to plaintiffs for trespass, conversion, breach of the covenant of quiet enjoyment, and mental suffering. The trial judge, upon his conclusion that defendant's conduct constituted unfair trade practices under G.S. 75-1.1, proceeded to treble the damages as awarded by the jury for trespass, conversion, and mental suffering, pursuant to G.S. 75-16.

From the verdicts and judgments entered thereon, defendant appealed.

*Theodore Fillette and Donald S. Gillespie, Jr., for plaintiffs.*

*Walker & Walker, by Frank H. Walker, for defendant.*

BROCK, Chief Judge.

Defendant brings forth some 36 assignments of error in "scatter bomb" fashion. For organizational purposes, those of his

arguments which we feel merit discussion will be loosely grouped in subdivisions of this opinion.

I

[1] Defendant's first assignment of error is to the denial of his pretrial motion for the case to be heard before another judge. Defendant argues that as evidenced by an order entered by Judge Hicks in another case involving defendant and relating to practices similar to the conduct at issue in the instant case, Judge Hicks had preconceived opinions and was biased against the defendant. Defendant's argument is without merit. Although only a two-page excerpt from the order in the prior case is included in the record on appeal in this case, its contents, which defendant refers to as "statements", are in reality findings of fact, which are part of a written ruling based upon evidence received by Judge Hicks sitting without a jury in the prior proceeding.

Defendant correctly states the law in this state that litigants are entitled to a fair trial before an unbiased judge. *Ponder v. Davis*, 233 N.C. 699, 65 S.E. 2d 356 (1951). *Ponder* involved a contested election for sheriff in which one of the litigants moved that the judge recuse himself due to his having actively supported and campaigned for the adverse party in the contested election. That type of *personal interest* in the outcome of litigation was considered by the Supreme Court to be sufficient grounds for recusation. No such personal interest or bias on the part of Judge Hicks appears from the record. This Court has held that the fact that a trial judge has repeatedly ruled against a party is not grounds for disqualification of that judge absent substantial evidence to support allegations of interest or prejudice. *In re Custody of Cox*, 24 N.C. App. 99, 210 S.E. 2d 223 (1974). *C.f. Perry v. Perry*, 33 N.C. App. 139, 234 S.E. 2d 449 (1977) (judge who entered *pendente lite* order for child support payments had presided at earlier criminal trial of defendant for failure to provide adequate child support).

The only evidence to support defendant's motion was that Judge Hicks had made findings of fact adverse to defendant in an earlier case. There has been no showing of bias in this case which would have required recusation of Judge Hicks.

Defendant's first assignment of error is overruled.

## II

[2]  The next series of assignments of error deal with the admission of certain testimony which defendant contends was irrelevant and prejudicial.

Defendant's third and sixth assignments of error relate to questions propounded by plaintiff on direct examination of the defendant and on cross-examination of defendant's employee, Melvin Soloman, which pertained to incidents involving the defendant and tenants other than the plaintiffs. Defendant argues that the evidence apparently was allowed for the purpose of impeaching the witnesses; that in at least one instance, the evidence did not appear to contradict defendant's earlier testimony; and that the evidence pertained to collateral matters and the witnesses' testimony was not properly subject to impeachment by extrinsic evidence. We disagree.

The underlying question appears to be whether any testimony relating to incidents involving other tenants of defendant could properly be elicited either as substantive evidence or for impeachment purposes. If plaintiffs could properly inquire into these matters in the first instance, they could then properly impeach defendant as an adverse witness pursuant to Rule 43(b), North Carolina Rules of Civil Procedure, and could properly impeach Mr. Soloman on cross-examination.

If such testimony is admissible for impeachment, it would arise from the following denial by the defendant:

"Q. Mr. Pressley, during December, 1974, did you or anyone acting under your control as an employee or agent clean out 3118 Cosby Place; the clothes, linen, dishes, or other personal effects of Ada Love or Jeffrey Love?

A. Not that I know of."

Subsequent to that exchange, plaintiffs' counsel was permitted to inquire over objection into defendant's and Mr. Soloman's "clean-up" of the personal possessions of tenants at three other residences in Charlotte during 1974 and 1975; plaintiffs' counsel was allowed to impeach defendant's testimony by inquiring over objection into statements made by defendant under oath in two other lawsuits involving similar circumstances; and was allowed

to utilize interrogatories from one of these other lawsuits on cross-examination of Mr. Soloman.

The obvious purpose of the above questions was to impeach defendant's denial that he or his employee acting within the scope of his employment "cleaned-up" the personal possessions of the plaintiffs. As such, evidence that defendant had acted in a certain manner regarding other tenants at other times does not constitute direct evidence that he so acted regarding plaintiffs. Rather, it is circumstantial evidence affecting the credibility of defendant's denial that he cleaned out the plaintiffs, and also indicating a practice of cleaning out the personal property of tenants. However, if the doing of one act has no other relevancy than that it indicates a disposition to indulge in that kind of conduct, from which the probability of the second act is inferable, then the evidence of the first act is not admissible. *Holmesly v. Hogue*, 47 N.C. 391 (1855). 1 Stansbury's North Carolina Evidence, (Brandis Rev. 1973), (hereinafter, Stansbury), § 91. Nevertheless, if "the doing of the first act has a logical tendency to prove some relevant fact other than mere character or disposition . . . it may be shown by competent evidence, subject of course to the general rule excluding evidence that is too remote to be of substantial probative value." Stansbury, *id.* Thus, evidence of defendant's conduct towards other tenants, was admissible if it tended to prove any other fact relevant to the inquiry. Furthermore, plaintiffs were not bound by defendant's testimony and could discredit him by proof of prior specific statements or other conduct which related to a matter pertinent and material to the case. 1 Stansbury, § 48.

"Testimony is relevant if it reasonably tends to establish the probability or the improbability of a fact in issue. (Citations omitted.) For this reason, the relevancy of evidence in a civil action is to be tested by the pleadings, which define the facts put in issue by the parties. (Citations omitted.)" *State ex rel Freeman v. Ponder*, 234 N.C. 294, 304, 67 S.E. 2d 292, 300 (1951). The facts put in issue by the pleadings in the instant case included, *inter alia*, whether there was an unauthorized entry by defendant or his agent or employee into the premises rented to the plaintiffs; whether there was a conversion of plaintiffs' personal property by defendant or his agent or employee; if there was indeed such an entry and conversion by Mr. Soloman, defendant's employee,

whether he was acting within the scope of his employment with the defendant; and whether trespass and conversion were part of the conduct of defendant's business (see Part VI, *infra*).

Plaintiff Ada Love testified that upon returning to the house at Cosby Place and discovering that the floors had been mopped and waxed and that her belongings were missing, she called Mrs. Betty Soloman, defendant's rental agent, who said that the clean-up man had been there. Thus the definition of "clean-up" was material to an explanation of the disappearance of plaintiffs' property. The questions put to defendant and Mr. Soloman, to which defendant excepts, concerning defendant's conduct and statements relating to other tenants, were material to the definition of clean-up. Defendant was asked if he had cleaned out or removed personal property belonging to other tenants. Evidence indicated that Cosby Place had been cleaned-up, and that the "clean-up man" had been there; therefore, the scope of "clean-up" on other occasions was competent as circumstantial evidence to indicate the scope of clean-up in the instant case.

Evidence relating to clean-up by defendant or Mr. Soloman on other occasions was also competent circumstantial evidence that the removal of plaintiffs' personal property by Mr. Soloman was within the scope of his employment with the defendant; thus impeachment of Mr. Soloman on cross-examination relating to his removal of personal property during clean-up of other tenants was proper.

Because of the relevance of the evidence relating to the definition of "clean-up" to the issues in this case, assignments of error numbers 3 and 6 are overruled.

### III

The next series of assignments of error deal with purported errors on the part of the trial court in limiting defendant's cross-examination of plaintiff Ada Love by sustaining objections to certain questions asked during the cross-examination. The first, assignment of error number 12, concerns the right of the trial judge to sustain an objection when none has been made by counsel. There is no merit to this assignment of error. *See Greer v. Whittington*, 251 N.C. 630, 111 S.E. 2d 912 (1960).

Defendant's thirteenth, fourteenth, fifteenth, seventeenth and nineteenth assignments of error deal with questions asked by defendant which in substance had been answered by plaintiff at some point during her testimony. The limits of cross-examination are largely within the discretion of the trial judge, *State v. McPherson*, 276 N.C. 482, 172 S.E. 2d 50 (1970), and this includes the discretion to ban unduly repetitious and argumentative questioning. 1 Stansbury, § 35. Furthermore, in no instance covered by assignments of error numbers 13-19 does the record show what the witness would have said had she been permitted to answer; nor does it appear from the record that defendant requested that a record be made of the answers the witness would have given pursuant to Rule 43(c) of the Rules of Civil Procedure. Exclusion of testimony cannot be held prejudicial on appeal unless appellant shows what the witness would have testified if permitted. *State v. Robinson*, 280 N.C. 718, 187 S.E. 2d 20 (1972).

Defendant's assignments of error numbers 12-19 are overruled.

## IV

Defendant's assignments of error numbered 21, 36 and 37 relate to the trial court's denial of defendant's Rule 50(a) and (b) motions for directed verdict and judgment notwithstanding the verdict testing the sufficiency of the evidence to go to the jury. The specific grounds asserted by defendant to support his motions for a directed verdict at the close of plaintiffs' evidence and again at the close of all the evidence were that there was insufficient evidence to show that the plaintiffs were lawfully occupying the house or that the defendant removed the property. In his motion styled as a motion for judgment notwithstanding the verdict defendant sought to have the verdict set aside as against the greater weight of the evidence, and to have the verdicts as to damages for conversion of personal property and for mental suffering set aside on the grounds that they were excessive. The asserted grounds are proper grounds for a motion for a new trial under Rules 59(a)(7) and 59(a)(6) respectively; however, no such motion appears in the record. For this reason, and the reasons set out below, these questions are not properly presented for review on appeal of the denial of defendant's motion for judgment notwithstanding the verdict.

[3] Since the North Carolina and Federal Rules 50 are substantially similar, federal interpretations are instructive to supplement the North Carolina decisions. Rule 50(a) requires that a motion for directed verdict state specific grounds, and this provision is mandatory. *Anderson v. Butler*, 284 N.C. 723, 202 S.E. 2d 585 (1974); *Wheeler v. Denton*, 9 N.C. App. 167, 175 S.E. 2d 769 (1970). Upon failure to state specific grounds, an appellant cannot question on appeal the insufficiency of the evidence to support the verdict. *Wheeler v. Denton, id.* The motion for judgment notwithstanding the verdict is technically only a renewal of the motion for a directed verdict made at the close of all the evidence, and thus the movant cannot assert grounds not included in the motion for directed verdict. *House of Koscot Development Corp. v. American Line Cosmetics, Inc.*, 468 F. 2d 64 (5th Cir., 1972) (since defendant failed to assert as grounds for directed verdict the sufficiency of the evidence of damages the question was not preserved for appeal by asserting such grounds in a motion after the jury's verdict). The rationale for this rule is that otherwise, a judgment notwithstanding the verdict might be entered on grounds which could have been met with proof at trial if such grounds had been suggested in the motion for directed verdict. 2B Barron and Holtzoff, Federal Practice and Procedure (Wright ed., 1961) § 1073.

[4] Thus defendant has waived appellate review of the sufficiency of plaintiffs' evidence to support the verdicts as to damages in this case. The only questions relating to the sufficiency of the evidence which are before this Court are those raised by defendant's motions for directed verdict. Therefore we are confronted only with the question of whether plaintiffs' evidence showing (1) that plaintiffs were lawfully occupying the house at Cosby Place, and (2) that defendant removed plaintiffs' property, was sufficient to go to the jury.

It is the well-established rule that in determining the sufficiency of evidence to withstand a defendant's motions for directed verdict and for judgment notwithstanding the verdict, all the evidence which supports the plaintiffs' claim must be taken as true and considered in the light most favorable to them, giving them the benefit of every reasonable inference which may legitimately be drawn therefrom, and resolving contradictions, conflicts and inconsistencies in their favor. *Supply Co. v.*

*Murphy*, 13 N.C. App. 351, 185 S.E. 2d 440 (1971). Applying the above test to the facts of the instant case, it is clear that there was sufficient evidence to go to the jury and from which the jury could find (1) that the plaintiffs were lawfully occupying the house at 3118 Cosby Place, and (2) that the defendant or his employee Mr. Soloman entered the premises and removed the personal property of the plaintiffs.

On the first question, there was evidence which tended to show that at the time in question, December 1974, Mrs. Betty Soloman was the rental agent for defendant and that she was charged with renting various pieces of property for defendant, including the residence at 3118 Cosby Place; that on Saturday, 7 December 1974, the plaintiffs saw an ad in the newspaper and contacted Mrs. Soloman about the possibility of renting an apartment; that the advertised apartment was unavailable but that Mrs. Soloman suggested that the plaintiffs look at the unit at 3118 Cosby Place; that the plaintiffs looked at the unit and liked it; that they returned to Mrs. Soloman and paid her a deposit in the amount of $65.00; that they returned to Mrs. Soloman's house on the following Monday and paid the first week's rent of $40.00, and received a key to the premises; and that they signed a lease covering the premises either on Saturday, 7 December 1974, or Monday, 9 December 1974. It was stipulated by the parties that Mr. Pressley did not evict plaintiffs from 3118 Cosby Place pursuant to any court action or judicial process. This evidence, considered in the light most favorable to the plaintiffs, was clearly sufficient to go to the jury and from which the jury could find that the plaintiffs were lawfully occupying the premises at 3118 Cosby Place after 9 December 1974.

As to defendant's second purported grounds for directed verdict, *to wit*, insufficient evidence that the defendant removed the femme plaintiff's property from the house at Cosby Place, the evidence considered in the light most favorable to the plaintiffs tends to show that Melvin Soloman was, at all times pertinent to this controversy, the employee of the defendant; that Mr. Soloman was the maintenance and clean-up man for defendant's rental property; that the defendant watched his rental units closely, visiting them as many as three times a week; that defendant kept duplicate keys to his rental units and a master key to all the units; that no one except defendant had access to these duplicate

and master keys; that defendant, upon determining that a unit had been vacated by a tenant, would give his maintenance man a key to the unit for purposes of cleaning it up; that sometimes Mr. Pressley worked with his clean-up man; that "clean-up" of rental units involved restoration of units after a tenant had left so that it could be re-rented; that this entailed, among other things, cleaning and buffing floors; that "clean-up" on other occasions had included removal of personal property belonging to tenants without their prior approval; that plaintiffs returned to 3118 Cosby Place on 19 December 1974, after some four days absence, and discovered that the house had been cleaned and that the floors had been cleaned; that they also found, upon their return, that the personal belongings of plaintiff Ada Love were missing but that the furniture belonging to defendant was still there; that plaintiffs called Mrs. Soloman and were told "that the clean-up man had been there." All of the evidence, considered in the light most favorable to the plaintiffs was sufficient to allow the jury to infer that the defendant, either personally or through his employee Melvin Soloman acting within the scope of his employment with defendant, removed the personal property belonging to plaintiff Ada Love from the premises at 3118 Cosby Place.

Defendant's assignments of error numbered 21, 36 and 37 are overruled.

V

[5] Defendant's assignment of error number 22 is feckless. Defendant contends that the trial court erred in refusing to grant a request for a jury instruction pertaining to the definition of "the greater weight of the evidence." Defendant's brief argument would seem to imply that the trial judge gave no instruction on greater weight. The record discloses that the court did indeed define greater weight, using the precise language as set out in North Carolina Pattern Jury Instructions—Civil § 101.10. The court is not required to charge the jury in the precise language requested so long as the substance of the request is included. *Faeber v. E.C.T. Corp.*, 16 N.C. App. 429, 192 S.E. 2d 1 (1972). Defendant does not attempt to show any prejudice from the refusal of the court to give the instruction as requested.

[6] Defendant further contends in assignment of error number 23 that the court erred in (1) refusing to adopt issues submitted

by defendant for the jury, and (2) in failing to make any distinction between the defendant's and his agent's alleged conversion in the issues submitted to the jury. As to the first point, defendant's brief is utterly void of argument or authority. App. R. 28(a) requires that a question be presented *and argued* in the brief in order to obtain appellate review. *State v. McMorris*, 290 N.C. 286, 225 S.E. 2d 553 (1976); *State v. Brothers*, 33 N.C. App. 233, 234 S.E. 2d 652 (1977). "Questions raised by assignments of error in appeals from trial tribunals but not then presented and discussed in a party's brief, are deemed abandoned." App. R. 28(a).

[7] Defendant's challenge to the trial court's failure to distinguish between defendant's and his agent's alleged conversion of plaintiffs' property in the issues submitted to the jury is without merit. There is absolutely no evidence in the record to indicate that defendant's agent, Melvin Soloman, had any access to the premises at 3118 Cosby Place other than under the directions of defendant. Furthermore, the trial court properly charged the jury with respect to the doctrine of *respondeat superior*. Therefore, to the extent that assignment of error number 23 presents any question for review, it is overruled.

[8] Defendant also contends in assignment of error number 33 that the court failed to give a balanced summary of the evidence. Defendant assails the court's apparent failure to recognize the defendant's contentions and to review the evidence in support of these contentions, and refers to the so-called "Preliminary Argument" at the beginning of his brief. This preliminary argument, which presents contentions to the effect that the plaintiffs surreptitiously moved into 3118 Cosby Place with the intent to defraud the defendant, is nothing more than a jury argument. A contention is not evidence. *Bodenheimer v. Bodenheimer*, 17 N.C. App. 434, 194 S.E. 2d 375 (1973). The record reveals that in the instructions on the several issues, the court gave a balanced summary of the contentions of the parties based on the evidence which had been elicited during the trial.

As to the alleged unbalanced summary of the evidence, suffice it to say that where one party presents substantially more evidence than the other, it is not error for the court's recapitulation of the first party's evidence to be longer than the recapitulation of the second party's evidence. *State v. Crutchfield*, 5 N.C. App. 586, 169 S.E. 2d 43 (1969). The plaintiffs in this case called

five witnesses; the defendant called two. Plaintiffs' evidence covered some 55 pages of the record; defendant's evidence covered approximately seven pages. Assignment of error number 33 is overruled.

We have reviewed the balance of defendant's assignments of error pertaining to the court's instructions to the jury, and find them, as to all parties, a fair and appropriate summary of the evidence and the law arising from the evidence. There is nothing in the instructions which would justify a new trial in this case. Likewise we have reviewed the balance of defendant's assignments of error, not discussed herein, pertaining to the conduct of the trial itself, and in our opinion defendant received a fair trial, free from prejudicial error.

## VI

Finally, defendant's assignments of error numbered 20, 34 and 35 present the question of whether the trial court erred in holding as a matter of law that the trespass and conversion as found by the jury constituted unfair trade practices by defendant under G.S. 75-1.1, entitling plaintiffs to treble damages pursuant to G.S. 75-16.

At the time this case arose, G.S. 75-1.1 read in pertinent part as follows: "(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. (b) The purpose of this section is to declare, and to provide civil legal means to maintain, ethical standards of dealings between persons engaged in business, and between persons engaged in business and the consuming public within this State, to the end that good faith and fair dealings between buyers and sellers at all levels of commerce be had in this State."

In *State ex rel Edmisten v. J. C. Penney Co.*, 292 N.C. 311, 233 S.E. 2d 895 (1977), our Supreme Court held that "the unfair and deceptive acts and practices forbidden by G.S. 75-1.1(a) are those involved in the bargain, sale, barter, exchange or traffic" between buyers and sellers. 292 N.C. at 316-17, 233 S.E. 2d at 899. In 1977, our Legislature rewrote the statute, (Session Laws—1977, Chapter 747), and greatly broadened its scope. However, the 1977 revisions were expressly declared inapplicable

to pending litigation. Thus we review the trial court's ruling under the pre-1977 version of G.S. 75-1.1.

[9] First we must determine whether "trade or commerce" under the statute, as interpreted in the J. C. Penney case, *supra*, encompasses the business of providing rental housing. Although we have been unable to find any North Carolina cases directly on point, our Supreme Court, in another context, has held that a lease is a chattel real and as such is a species of intangible personal property. *Investment Co. v. Cumberland County*, 245 N.C. 492, 96 S.E. 2d 341 (1957).

It is our conclusion that for purposes of G.S. 75-1.1, a lease is a sale of an interest in real estate. The Supreme Court of Pennsylvania so stated in *Commonwealth v. Monumental Properties, Inc.*, 459 Pa. 450, 329 A 2d 812 (1974). In that case, it was held that Section 3 of the Pennsylvania Consumer Protection Law, which was identical to the pre-1977 version of G.S. 75-1.1(a), covered unfair or deceptive practices in connection with the leasing of housing. As noted in the opinion:

> "Functionally viewed, the modern apartment dweller is a consumer of housing services. The contemporary leasing of residences envisions one person (landlord) exchanging for periodic payments of money (rent) a bundle of goods and services, rights and obligations." 329 A 2d at 820.

Thus we hold that the rental of residential housing is "trade or commerce" under G.S. 75-1.1. We now must determine whether the trial court properly concluded that defendant's conduct constituted "unfair or deceptive acts or practices in the conduct of" said trade or commerce.

[10] In cases under G.S. 75-1.1 and 75-16, it is ordinarily the province of the jury to find the facts, and based on the jury's findings the court must then determine as a matter of law whether the defendant's conduct violated G.S. 75-1.1. *Hardy v. Toler*, 288 N.C. 303, 218 S.E. 2d 342 (1975). In the instant case, the jury properly found facts that the defendant or his agent trespassed upon the premises rented to the plaintiffs and converted the personal property of the femme plaintiff. Implicit in the verdict as to conversion is the finding that defendant refused to return the property upon demand. Also, it was stipulated that defendant did not

evict plaintiffs from the premises pursuant to any judicial process.

G.S. 75-1.1(b) states that the purpose of the section is to provide means of maintaining "ethical standards of dealings . . . between persons engaged in business and the consuming public" and to promote "good faith and fair dealings between buyers and sellers . . . ." Defendant is clearly a person engaged in business—he was renting around seventy-six units at the time the lawsuit was commenced—and plaintiffs were part of the consuming public.

We hold that defendant's conduct constituted unfair or deceptive acts or practices in commerce contrary to the provisions of G.S. 75-1.1 and affirm the award of treble damages to plaintiffs pursuant to G.S. 75-16. We regard as surplusage the independent findings of fact made by the trial judge.

No error.

Judges BRITT and MORRIS concur.