DAVID B. LEE v. CAPITOL TIRE COMPANY, INC.

No. 7810SC318

(Filed 6 March 1979)

1. **Evidence § 49.1— hypothetical question—exclusion of facts proper**

   In an action to recover for damages suffered by plaintiff when a wheel on his tractor-trailer separated from the hub because defendant allegedly failed to tighten inner lug nuts, factors which defendant contended were improperly omitted from a hypothetical question asked of plaintiff's expert were either facts within the expert's personal knowledge, and thus not required to be included in the question, or were facts as contended by defendant which were the object of vigorous cross-examination.

2. **Rules of Civil Procedure § 50.3— motion for directed verdict—failure to state grounds—assertion of grounds on motion for judgment n.o.v. improper**

   The trial court did not err in denying defendant's motions for a directed verdict and judgment notwithstanding the verdict, since defendant did not state the grounds for his motion for directed verdict, and he could not assert grounds for his motion for judgment notwithstanding the verdict which had not been included in the motion for directed verdict.

APPEAL by defendant from *Clark, Judge.* Judgment entered 11 January 1978, in Superior Court, WAKE County. Heard in the Court of Appeals 17 January 1979.

Plaintiff filed suit to recover for damage to his tractor-trailer outfit and for the loss of its use due to the damage which occurred when the left front drive wheel of the tractor separated from the hub and completely came apart from the Kenworth tractor. The dislodged wheel collided with the undercarriage of the 1973 Utility trailer and caused damage in the alleged amount of $2,138.64. Plaintiff also alleged that due to the loss of use of the trailer during the period of time necessary for repairs, he suffered damages of $3,600.

Plaintiff's complaint avers that defendant, who installed ten new Michelin tires on the Kenworth tractor, mounted them in a negligent manner, i.e. failed to tighten properly the inner lug nuts, which caused the wheel hub lugs to wear rapidly and fail due to metal fatigue. Plaintiff also alleged breach of an implied warranty, but abandoned that theory at trial.

Defendant Capitol Tire Company, Inc., admitted installing the tires, but denied any negligence with respect to that installation. Defendant counterclaimed for $1,750 plus interest, this amount representing the cost of the tires and installation for which it had never been paid, and for the balance of an open account plaintiff maintained with defendant in the amount of $62.10. Plaintiff replied admitting that upon his recovery these amounts should be charged as a setoff.

Plaintiff's evidence tended to show that David B. Lee, a trucker by occupation, took his 18-wheel tractor-trailer into Capitol Tire Company, Inc., on 11 October 1975 to have ten new Michelin tires installed on the tractor. The best tires from the tractor were to be transferred to the trailer. Lee's son Marty accompanied him. They both remained at the shop most of the approximately five hours time required for the installation. Lee testified that at no time during the day while he observed the defendant's two employees mounting the tires did he see anyone chisel off old lug nuts. He also denied receiving any instructions from L. C. Norris, President of Capitol Tire Company, Inc., that he needed more lug nuts on the wheel hubs to replace the old ones that had to be chiseled off.

The wheel eventually separated from the hub when plaintiff was driving about 50 miles per hour near Fort Worth, Texas, on the Fort Worth-Dallas Turnpike. He was making his second trip

to the west coast since the new tires were mounted. The mileage on the new tires amounted to between 11,000 and 12,000 miles. Plaintiff testified that no one had performed any maintenance work on the wheels or tires since defendant completed the mounting. At the time of the incident, Lee heard a "big blow, boom" and was thrown around the cab of his truck. He stopped, noticed that the wheel was missing from the hub, and observed where the errant wheel had apparently hit the underside of the trailer causing damage to the tandem. The next day Lee and his son found the wheel where it had come to rest down an embankment beside the highway.

Plaintiff spent the remainder of 11 November 1975, and the next two days arranging for his tractor and trailer to be repaired. The trailer was left at Fort Worth Trailer Company, the local Utility dealer, to be repaired. The contents of the damaged trailer were transferred to a new trailer Lee had obtained from El Paso. The tractor was repaired at Sam's Truck Service in Fort Worth. Plaintiff and his son resumed their trip with the replacement trailer under tow on the night of 13 November 1975.

Plaintiff testified that he could tell the wheel came off due to loose inner lug nuts because, as he stated, ". . . I see no other way they could have come off if they hadn't been loose and running the others off." On cross-examination, plaintiff admitted that the wheel could come off if some nuts had been left off. In such a case, the wheel would begin to wobble and eventually strip out the stud from the hub of the wheel. Plaintiff's expert witness John C. Jeffries explained during his testimony how the dual-disc wheel arrangement on this "Budd-type" ten-hole wheel functions. The ten lug bolts (or studs) are passed through the hub and pressed into place from the inside of the hub. The wheel is then pushed onto the hub by aligning the wheel so that the studs pass through the ten holes on the wheel. The large hole in the center of the wheel is then fitted to the machined area on the hub to provide load-bearing capacity. Each of the ten nuts is then supposed to be tightened onto each stud in sequence with the beveled edge to the wheel. The outer wheel is then placed onto the studs over the inner lug nuts and tightened into place by another set of lug nuts in the same manner. The expert then testified in substance that in his opinion, based upon his examination of the wheel, the

separation occurred because the inner lug nuts were not properly tightened.

Defendant's President L. C. Norris testified that his employees Joe Moore and Charles Dunn mounted the tires for Mr. Lee. He stated that he was in and out of his office to check on the progress of the installation and that it took a long time to install the new tires because they had to chisel the inner nuts off the lug bolts to remove the wheels because someone had put the nuts on "cross-threaded". Norris called around town to find replacements for the nuts, but because it was past noon on Saturday he was unable to find any. Norris testified that plaintiff knew about the problem, told him to replace those nuts that were still good, and that he was going to have them replaced Monday before he went out. Joe Moore and Charles Dunn testified to substantially the same facts.

The case was submitted to a jury which returned a verdict finding that plaintiff was entitled to damages totalling $3,547.51. A directed verdict was granted for defendant on the counterclaim in the amount of $1,750 with interest. Defendant appeals.

*Blanchard, Tucker, Twiggs & Denson, by R. Paxton Badham, Jr., for plaintiff appellee.*

*L. Bruce McDaniel for defendant appellant.*

MORRIS, Chief Judge.

[1] Defendant challenges the sufficiency of the hypothetical question propounded to plaintiff's expert witness concerning the cause of the separation of the outer wheel from the hub of the Kenworth tractor. The witness, John C. Jeffries, was tendered and accepted without objection as an expert mechanic, damage analyst, and appraiser. Jeffries personally examined the wheel that separated from the plaintiff's truck. At trial he described the wheel assembly and the proper mounting technique. Plaintiff's counsel then submitted the following question to the witness:

"Q. Okay. Now, I'm going to ask you to assume some facts, if you will, please. If you could assume that the jury should find by the evidence and the greater weight that on November

11th, 1977 (sic), while driving on a highway near Fort Worth, Texas, at a speed of approximately fifty miles an hour, this wheel, the same wheel that has been designated as Plaintiff's Exhibit A, came off of a 1971 Kenworth tractor then being operated by the plaintiff, David Lee, and that approximately one month earlier than that, Mr. Lee had had this wheel installed by the defendant, Capitol Tire Company, and in the meantime driven some twelve to fourteen thousand miles. Now, based on those facts and on your personal examination of this wheel, do you have an opinion as to what caused this tire and wheel to separate from the hub and come off?

MR. MCDANIEL: Objection.

COURT: Overruled.                                    EXCEPTION NO. 1

A. Yes, sir, I do.

Q. And what is that opinion?

A. In my opinion, the inner nuts were not properly tightened before the outer wheel was put on, . . ."

After the witness elaborated on the basis of his opinion, defendant moved to strike the testimony essentially on the grounds that the question failed to include any hypothesis with respect to the pre-existing condition of the wheel, i.e. defendant's contention that plaintiff insisted that the tires be mounted despite his knowledge that some of the lug nuts could not be replaced. Defendant objects to the question on the basis of the well-established rule in this State that a hypothetical question omitting facts which go to the very essence of the case may be so incomplete that an expert's opinion based thereon would be unreliable and objectionable. See State v. Taylor, 290 N.C. 220, 226 S.E. 2d 23 (1976); Dean v. Coach Co., 287 N.C. 515, 215 S.E. 2d 89 (1975). The rule is to prevent the submission of opinions which are based on information clearly insufficient to form the basis of an opinion, not to require a propounded hypothetical question to assume every state of facts which could be found from the evidence. It is permissible in this State to ask an expert for an opinion based upon different combinations of facts. If a party is concerned that omitted facts might elicit a different opinion from the expert, it is incumbent upon him to elicit an opinion based upon a counter-hypothetical question containing other facts which the jury could find from the evidence. See Dean v. Coach Co.,

Lee v. Tire Co.

*supra; Godfrey v. Power Co.,* 190 N.C. 24, 128 S.E. 485 (1925); *State v. Stewart,* 156 N.C. 636, 72 S.E. 193 (1911). Similarly, it has been suggested that the better practice is to permit questions which contain less than all facts material to the issue because to require the inclusion of all facts would lead to lengthy, meaningless questions. The safeguards preventing misleading questions include cross-examination *(see generally* E. Cleary, McCormick on Evidence § 14 (2d ed.)), and the rule disallowing an opinion based on a set of facts clearly insufficient as a basis for an opinion.

It is elementary that a hypothetical question submitted to an expert should include only those facts which a jury could be justified in inferring from the evidence. *See generally* 1 Stansbury's N.C. Evidence § 137 (Brandis rev. 1973). Defendant contends that plaintiff's hypothetical question was fatally defective for failing to include facts relating to (1) how the wheel was initially installed, (2) the previous condition of the wheel assembly, (3) interim use or misuse of the wheel, and (4) the fact that some of the lug nuts may have intentionally been left off. The only evidence in the record prior to the questioning of the witness negated defendant's contentions that there was preexisting damage to the wheel and that some of the lug nuts were intentionally not replaced. There was no evidence concerning the other facts. Therefore, the plaintiff's hypothetical question could not properly assume facts not in evidence.

Furthermore, defendant was afforded the opportunity to vigorously cross-examine the expert concerning the basis of his opinion. He questioned the expert with respect to the possibility that the damage may have existed prior to defendant's mounting of the wheels and that some lugs may not have been replaced at plaintiff's insistence. This is the proper function of cross-examination and raised weaknesses perceived by defendant to exist in the expert's opinion testimony.

The objection to the hypothetical question was properly overruled. The factors not included in the question were either facts within the expert's personal knowledge, and thus not required to be included in the question *(see generally* 1 Stansbury's N.C. Evidence § 136 (Brandis rev. 1973)), or were facts as contended by the defendant which were the object of vigorous cross-

examination. Those facts included in the hypothetical question were supported by plaintiff's evidence. The expert's personal knowledge and those facts supplied by the question provided a sufficient foundation for the witness' opinion testimony. It was incumbent upon defendant's cross-examination to expose any weakness in that testimony. Defendant's first assignment of error is overruled.

[2] Defendant excepts to the court's denial of its motions for a directed verdict and judgment notwithstanding the verdict and assigns error to these rulings. We note initially that the record does not disclose the specific grounds for defendant's motions for a directed verdict. G.S. 1A-1, Rule 50(a) mandates: "A motion for a directed verdict shall state the specific grounds therefor." Our Supreme Court has recognized that the requirement is mandatory, although the courts need not enforce the rule infexibly when the grounds for the motion are apparent to the trial court and the parties. *Anderson v. Butler*, 284 N.C. 723, 202 S.E. 2d 585 (1974); *see also Clary v. Board of Education*, 286 N.C. 525, 212 S.E. 2d 160 (1975). Defendant subsequently moved for a G.S. 1A-1, Rule 50(b) judgment notwithstanding the verdict following the jury verdict in plaintiff's favor and did state grounds for the motion. The reviewability of the trial court's rulings on similar motions was addressed by this Court in *Love v. Pressley*, 34 N.C. App. 503, 239 S.E. 2d 574 (1977), *cert. denied*, 294 N.C. 441, 241 S.E. 2d 843 (1978), which is controlling. We quote:

> "Upon failure to state specific grounds, an appellant cannot question on appeal the insufficiency of the evidence to support the verdict. *Wheeler v. Denton*, [9 N.C. App. 167, 175 S.E. 2d 769 (1970)]. The motion for judgment notwithstanding the verdict is technically only a renewal of the motion for a directed verdict made at the close of all the evidence, and thus the movant cannot assert grounds not included in the motion for directed verdict. *House of Koscot Development Corp. v. American Line Cosmetics, Inc.*, 468 F. 2d 64 (5th Cir., 1972)." *Love v. Pressley*, 34 N.C. App. at 511, 239 S.E. 2d at 580.

Even if we were to infer from the record that defendant's motion for a directed verdict was based on the insufficiency of the evidence of negligence to go to the jury, defendant is deemed to

have abandoned that exception by failing to assign this specific ground of error and by failing to make supporting arguments in the brief. *See* N.C. Rules of Appellate Procedure, Rule 10(c) and Rule 28(a).

Furthermore, we note that defendant did not plead the affirmative defenses of contributory negligence and assumption of the risk as required by G.S. 1A-1, Rule 8(c). Consequently, defendant is not entitled to that defense upon a motion for directed verdict, nor was it entitled to instructions regarding the issues of contributory negligence or assumption of risk.

Defendant further assigns error to the trial court's summary of the evidence indicating that plaintiff rented a substitute trailer and the instruction concerning damages for loss of use of the trailer, to the court's failure to charge the jury concerning the expert's testimony that failure to replace the lug nuts could cause the wheel to come off, and to the denial of defendant's motion for a new trial. We note initially that defendant's brief fails to refer to the proper exception numbers in certain instances and refers to the wrong page numbers of the exceptions in every instance. *See* North Carolina Rules of Appellate Procedure, Rule 28(e) (*see also* Drafting Committee Note to Subdivision (e) (1977 Cum. Supp.)). This Court will not "fish out" an appellate's exceptions which are not referred to by the proper printed page number. *See e.g., Shepard v. Oil & Fuel Co.*, 242 N.C. 762, 89 S.E. 2d 464 (1955); *Rawls v. Lupton*, 193 N.C. 428, 137 S.E. 175 (1927). Thus defendant's remaining assignments of error are not properly before this Court and need not be considered. Nevertheless, we have reviewed the record and have found no valid reason for disturbing the result reached in the trial court.

No error.

Judges MARTIN (Harry C.) and CARLTON concur.