This proceeding was brought for the purpose of processioning the lands of the parties, who are adjoining proprietors, and of ascertaining and declaring where is the dividing line between them. The case, in one view of it, turns upon the true location of the line which is first called for in the deeds, under which the plaintiff claims as color of title. The plaintiff introduced and read in evidence a grant from the State to Samuel Lawson for 200 acres of land, and offered evidence to prove that it covered the land in controversy, but there was no evidence connecting his deeds with this grant, so that he claimed the land altogether under color of title and adverse possession, and for this reason the proceeding was finally resolved into an action of ejectment. *Page 549 
Plaintiff relied on a deed from Bryan H. Gaskins and others, heirs of David Gaskins, to Alonzo Gaskins and mesne conveyances to himself. They described the land as 225 acres beginning at a black gum, the first corner of the Lawson patent, and running with the west edge of the Shitton Bridge Swamp to Pamlico Road, thence north up the said road to a post oak, the dividing corner between Daniel Gaskins and Silas Gaskins in Bixley's patent, and thence to the beginning, "being a part of the land purchased by David Gaskins from James Gaskins." The deed from James Gaskins to David Gaskins, dated 13 November, 1856, and mentioned in the deed to Alonzo Gaskins, describes the land as beginning at the same black gum, which is the first corner of the Lawson grant, "and running with the edge of the swamp on the east side of Pamlico Road to a post-oak, the dividing corner between Daniel Gaskins and Silas Gaskins in the Bixley patent," sold by Levin Gaskins, and thence to the beginning, containing 125 acres. The post-oak is the same corner called for in the Alonzo Gaskins deed and the mesne conveyances from him to the plaintiff. The deed from Daniel Gaskins to James Gaskins, dated 19 June, 1833, describes the land as "beginning at the black gum, first corner of the Lawson patent in the mouth of the swamp, and running with the edge of the swamp on the east side to Pamlico Road, and thence with said road to a post-oak, the dividing corner between said Daniel Gaskins and Silas Gaskins, in Bixley's patent, sold by Levin (676) Gaskins, and thence to the beginning, containing 125 acres." There was evidence that the last two deeds covered the same land, and that the beginning corner in the deeds of the plaintiff was not on the west edge of the swamp, and to reach the west edge it would be necessary to run some distance across the north edge of the swamp; and further, that you would not reach Pamlico Road by running along the western edge of the swamp, as the two did not intersect, but the call for a line along the west edge would intersect the Cool Spring or Poley Bridge Road, which runs about east and west, the Pamlico or Core Point Road running about northeast and southwest and some distance away. The map used at the trial and before this Court shows this to be the case. In order to reach Pamlico Road, the line along the western edge of Shitton Bridge Swamp would have to be extended some distance along the edge of another swamp, called Poley Bridge Swamp or Branch.
Defendant introduced a deed from Daniel Gaskins to John S. Gaskins, dated 16 March, 1844, for a tract of land beginning at the mouth of Griffith Branch at the point 1, as indicated on the map, and running various courses to a stake on the northeast edge of Shitton Bridge Swamp, and thence down the same, which would be on its east edge, to *Page 550 
a gum in the edge of Gatlin's old millpond, and thence by various courses to the beginning. The defendants claim either as heirs of John S. Gaskins or by deeds from those who were his heirs. It was conceded that neither of the parties had shown any paper title connected with Lawson grant, and it was also admitted that the Lawson corner was at the black gum indicated by the letter A on the map. With reference to the calls of the deed from James Gaskins to David Gaskins, viz., "beginning at the black gum, first corner of Lawson's patent in the mouth of the swamp, and running with the edge ofthe said swamp on the east side of Pamlico Road to a post-oak," and especially the last call, which is italicized, Henry Gaskins, one of the heirs of David Gaskins, and under whom the plaintiff claims by deed to David Cogden, as one of his mesne conveyances, testified:
(677) Q. There is the gum up there and there is the Pamlico Road down there (indicating). Don't you know, from Lawson's gum on the east side of Pamlico Road you couldn't run at all? A. It is evidently on the east side of the swamp to Pamlico Road. It is evidently a mistake of the draftsman — a mistake somewhere.
Q. You never claimed on the other side of Pamlico Road? A. No, sir; I never claimed on the south side of the road, or the east side, whatever you call it.
Q. Where is that deed, the original deed made to your father? A. I don't know.
Q. Which one of your children had it? A. I could not answer that question. I don't know.
There was much testimony as to the adverse possession of a part of the Shitton Bridge Swamp, the locus in quo, by the respective parties. The presiding judge explained the contentions in the case, and the questions arising upon the evidence, to the jury, defining what is meant in law by adverse possession sufficient to ripen color of title. He left it to the jury to determine whether the parties in the deeds of the plaintiff intended to call for the east or west edge of the swamp, for the purpose of settling a question of estoppel, as it was called, which arose between plaintiff, claining [claiming] under Alfred Gaskins, and some of the defendants, claiming, from the same source, charging the jury that if the call in the deed of March, 1884, to Alonzo Gaskins, was not intended by the parties to run with the west edge, but with the east edge thereof, as contended by the defendants, there would be no estoppel as between the plaintiff and those of the defendants who also claim from Alfred Gaskins in the chain of deeds, as the said parties would not, in that case, claim the same land from a common source; but that, notwithstanding this finding, if made by the jury, they must consider the deed of Bryan *Page 551 
Gaskins and others to Alonzo Gaskins, dated March, 1884, as sufficient color of title for him to be ripened into a good title by the requisite adverse possession of the land, and plaintiff's right to their verdict would then depend upon the nature of his possession, to be ascertained by the jury under the evidence and the instructions of the court in regard thereto.
The jury returned a verdict in favor of the defendants, finding (678) that plaintiff's western boundary is the east edge of the swamp, and not, as contended by him, the west edge, and that said east edge of the swamp is the divisional line between plaintiff and defendants. Judgment was entered upon the verdict, and plaintiff appealed.
After stating the case: It appears plaintiff from the undisputed facts of the case that the call in the plaintiff's deeds for the "west edge" of the swamp was a clerical mistake, and was clearly intended for the east edge, the word "west" having inadvertently been substituted for the word "east" by the draftsman. When this is shown to be the case, it has been held frequently in this and other jurisdictions that the court will itself rectify the error, by applying the call to the true line intended by the parties, when the other calls indicate the intention and the matter is free from any doubt or uncertainty. Person v. Rountree, 2 N.C. 378; s. c.,1 N.C. 1. When passing upon a similar question in Mizzell v. Simmons,79 N.C. 190, the Court held that where "the mistake is obvious and is fully corrected by the other calls of the deed and the plat annexed, it presents no difficulty, and the courts will construe `east' to mean `west,' to correct a mistake, when the intent of the parties appears, and the means of correcting it are presented," citing Cooper v. White, 46 N.C. 389; Houserv. Belton, 32 N.C. 358; Campbell v. McArthur, 9 N.C. 33. In the last cited case the Court fully approved this instruction of the court to the jury, that a mistake in a course or distance should not be permitted to disappoint the intent of the parties, if that intent appeared, and if the means of correcting the mistake are furnished either by a more certain description in the same deed or by reference to another deed containing a more certain description," and added: "So that I cannot think any difficulty will present itself in ascertaining the land intended to be conveyed by the deed, when recourse is had to the patent. The grantor has referred to this as the means of correcting any mistake in the (679) description of the land, and of ascertaining what his intent was in making the deed. (5 Wheaton, 359, 362.) Words shall always *Page 552 
operate according to the intent of the parties, if by law they may; and if they cannot operate in one form, they shall operate in that which by law shall effectuate the intention. This is the more just and rational mode of expounding a deed, for, if the intention cannot be ascertained, the rigorous rule is resorted to, from necessity, of taking the deed most strongly against the grantor." It was held in Houser v. Belton, supra, that where a deed described a corner as being on the east side of a creek, it is admissible for the party to show, by competent testimony, that the corner was in fact on the west side of the creek; and that when there is a discrepancy between the course and other more certain descriptions in the deed, such as natural objects, the former must give way, it being so easy to make a mistake in giving the course, and the other calls being more reliable and certain. And in Cooper v. White, supra, Judge Battle stated it to be well settled that a mistake in the course called for in a deed shall not be permitted to disappoint the intent of the parties, if that intent appear and if the means of correcting the mistake are furnished, either by a more certain description in the same deed or by reference to another deed containing a more certain description, citing Ritter v. Barrett,20 N.C. 266. The same doctrine was applied in Davidson v. Shuler,119 N.C. 583, to the correction of what was termed "a slip of the pen" in writing "south" instead of "north," and in Wiseman v. Green,127 N.C. 288, where it was held that the court undoubtedly has the right to construe a deed, and in proper cases to correct an inadvertence of the scrivener, "a slip of the pen," when it plainly appears from the deed itself so as to conform to the intention of the parties, and in that case "west," as it was written, was taken to mean "east," and the calls were accordingly so adjusted. It was said in Kea v. Robeson, 40 N.C. 373, that courts are always desirous of giving effect to instruments according to the intention of the parties, so far as the law will allow; so just and reasonable is this rule that it has long grown into a maxim, that (680) favorable constructions are put on deeds. Commenting upon the use to be made of a reference by one deed to another, Judge Gaston said, in Ritter v. Barrett, supra: "The very purpose of the reference would seem to be to ascertain with more particularity what it was apprehended might not have been otherwise sufficiently described. They, therefore, declare their intent to convey unto John Sowell, the some land which Jacob McLindon sold to Isaac Sowell. If, therefore, in the description of the land thus conveyed there be found any inaccuracy or deficiency, that inaccuracy is corrected and that deficiency supplied the moment we ascertain the true boundaries of Isaac Sowell's purchase, and these appear upon the face of McLindon's deed." In Gudger v. White, *Page 553 141 N.C. 515, referring to Ritter v. Barrett, we said: "This case was followed by Everitt v. Thomas, 23 N.C. 252, in which Chief Justice Ruffin
says: `We do not doubt that, by a proper reference of one deed to another, the description of the latter may be considered as incorporated into the former, and both be read as one instrument for the purpose of identifying the thing intended to be conveyed.' He further says that this is especially so when the calls of the two deeds, it turns out, are not inconsistent with each other, and there is a manifest intention by the latter deed to convey the whole or a part of the land described in the earlier one. In such a case the reference will be allowed to help an imperfect description, so as to make it conform to the principal intention." It has been thoroughly established that where one deed refers to another for a description, the latter must be taken as if embodied in the deed referring to it, and the two so construed together that the premises described in the first will pass under the second deed. Gudger v. White, supra; 4 Am. and Eng. Enc. of Law (2 Ed.), 803; Hemphill v. Annis, 119 N.C. 514. In Gudger v. White, supra, we resorted to these rules in the location of a dividing line or boundary between adjoining proprietors of land, and we may appropriately reproduce the language used by us in that case as strongly applicable to the facts of this appeal, as follows: "It is not difficult by reading the deed to reach a satisfactory conclusion as to what the parties meant, and we are required by the settled canon of construction so to interpret it as to ascertain and effectuate the intention of the parties. Their (681) meaning, it is true, must be expressed in the instrument; but it is proper to seek for a rational purpose in the language and provisions of the deed and to construe it consistently with reason and common sense. If there is any doubt entertained as to the real intention, we should reject that interpretation which plainly leads to injustice, and adopt that one which conforms more to the presumed meaning, because it does not produce unusual and unjust results. All this is subject, however, to the inflexible rule that the intention must be gathered from the entire instrument, `after looking,' as the phrase is, `at the four corners of it.'" The rule thus stated has been more recently approved and adopted by us in several cases decided by this Court. Bryan v. Eason, 147 N.C. 284; Triplett v.Williams, 149 N.C. 394; Acker v. Pridgen, 158 N.C. 338; Highsmith v.Page, ibid, 226, and Beacom v. Amos, ante, 357, and numerous cases cited therein. It must not be supposed that this wholesome rule interferes with the principle that parol evidence is not allowed to contradict or vary a written instrument (Moffitt v. Maness, 102 N.C. 457), for there is no variation from the terms of the deed, but merely a correct ascertainment of them by construing *Page 554 
the entire instrument to get at the intent and effectuate it. We do not insert a term not in the deed for one that is here, for there is no process of substitution or alteration. That which renders the deed ambiguous and its meaning obscure, if allowed to stand by itself and considered alone, is merely viewed in the clear light of more certain and trustworthy provisions, and, if found to have been manifestly a mistake, the result of inadvertence, is discarded and not permitted to defeat the real intention of the parties, as otherwise expressed in the paper-writing. This is a most reasonable and practical rule, and has the great advantage of being also a very just one. Nor do we invade the province of a court of equity by correcting or reforming the instrument, which, of course, works a material change in it, to the extent of making a different contract than the one expressed in the language employed by the parties. We are only saying what the parties meant by all they have said, neither (682) taking from nor adding to their agreement. The deed corrects itself, so to speak, by its own terms, and the pervading intention of the parties is fulfilled. Applying this principle to our facts, reconciling any apparent discrepancies, and seeking for the true intent in the deed, we find that the first call in the plaintiff's deed, after leaving the first corner at the black gum, or Lawson's corner, is for another physical object, the public highway, known as Pamlico Road, and that this road is so situated with its winding course, generally northeast and southwest, that it could not be reached by pursuing that call in the deeds along the west edge of the swamp, but that in order to reach it, it will be necessary to insert a long line, at the north end of the swamp, extending to its west edge, and at the south end another long line not mentioned in the deeds, as the west edge of the swamp does not coincide with or fit into either the call for the black gum, Lawson's corner, or the one for the Pamlico Road, but if you run from the black gum along the east edge of the swamp, it will intersect that road at the point in the Pamlico Road designated by the letter O in the map, and this will fit into the next call, "thence north up the road to the post-oak," and this can be done without any variation required by the substitution of lines not called for in the deeds. So far, this case presents reasons quite as strong and cogent for adopting the east edge of the swamp as the true line as any advanced in the cases we have cited, in support of a similar course taken in them. But plaintiff's deeds describe the land intended to be granted by them as the same, or a part of it, which was conveyed in the deed of James Gaskins to David Gaskins, and by a fair construction of that deed it conveys the same land as is described in the deed from Daniel Gaskins to David Gaskins, that is, they call for the line from the black gum along the *Page 555 
east edge of the swamp to the Pamlico Road and then up the road to the post-oak. If we should follow literally the calls in the deed from James Gaskins to David Gaskins, the land would be impossible of location, but it is perfectly manifest what the deed means. The word "of" was evidently intended by the draftsman for "to," so that when construed by its terms and the map, showing the different objects in their relation to each other, it conveys a tract of land beginning at the black gum and running thence with the east edge of the swamp to the Pamlico (683) Road, thence with the road to the post-oak, an admitted corner, and thence back to the beginning, containing 125 acres. This is in exact harmony with what is written in the preceding deed of Daniel Gaskins to James Gaskins, who conveyed to David Gaskins, and it also agrees with what plaintiff's own witness, Henry Gaskins, son of David Gaskins, said about it, that the call in the deed from James Gaskins to his father, David Gaskins, "is evidently meant for the east side of the swamp to the Pamlico Road," and the call, as it appears in the deed, that is, running (from the black gum) with the edge of the swamp on the east side of Pamlico Road to a post-oak, was also "evidently a mistake of the draftsman — a mistake somewhere," and further, he stated that those under whom plaintiff claims never asserted ownership to any land on the south side or east side of the Pamlico Road. It may be that the mistake was committed in copying the original deed on the registration book, as it appears that the registry was used and not the original. However it occurred, the deeds and map all show that the intended line was the east edge of the swamp. In Houser v. Bolton, supra, a corner was described as being on the east side of a creek, when the circumstances show it should have been on the west side, and it was held competent to show the mistake by competent proof, though it be parol testimony, citing the leading case of Person v. Rountree,supra, where south was read for north, because of a manifest inadvertence of the draftsman, by which the mistake occurred. The mistake in our case is obvious, and it should not, therefore, be allowed to prejudice the right of the defendants. Bradford v. Hill, 2 N.C. 30.Johnson v. Bowlware, 149 Mo., 451, was much like this one, and it was there held that, "Where a part of a description in a deed is inconsistent with the other parts, if sufficient remains from which the intention of the parties can be ascertained, that part which is repugnant may be rejected altogether. And this may be done in an action of ejectment. And if it is clear that the word `west' — a call for the course — was by mistake of the scrivener written for `east,' in a description which also calls for `the place of beginning' in the same connection, that word will be rejected as repugnant." (684) See Thatcher v. Howland, 2 Metcalf (Mass.), 41; Warden v. Harris, 47 S.W. 834. *Page 556 
But the court instructed the jury that notwithstanding they found that the line ran with the east instead of the west edge of the swamp, the plaintiff's deed was color of title, and if he and those under whom he claimed had been in adverse possession for the time required to ripen title, he was entitled to recover. It was error to submit the question of the boundary, in this case, to the jury. What is a boundary is a question of law; where it is, a question of fact; but there was no dispute as to where it is, the only question being what it is, whether the east or west edge of the swamp, either of these two lines being easily located. The error, though, was cured by the verdict of the jury. Vaughan v. Exum, ante, 492;Hardy v. Ward, 150 N.C. 385. Color of title cannot extend beyond the boundaries of the deed constituting it (Lumber Co. v. Swain, ante, 566) and the land must be located within and embraced by the boundaries. Marshall v.Corbett, 137 N.C. 555. We suppose the court thought that the mistaken call for the west side of the swamp was sufficient to show good faith, and, therefore, could be considered as colorable title, under the accepted definition that color of title is that which in appearance is title, but which in reality is no title at all. Knight v. Grimm, 110 Va. 400. The particular instrument does not depend upon the belief of the claimant as to its sufficiency to confer title (Reddick v. Leggett, 7 N.C. 539; Rogers v.Mabee, 15 N.C. 180), but on its professing to pass a title, which it fails to do, either from want of title in the person making it or from the defective mode of conveyance employed, but it must not be so obviously defective that no man of ordinary capacity could be misled by it. Tate v.Southard, 10 N.C. 119; Dobson v. Murphy, 18 N.C. 586; McConnell v.McConnell, 64 N.C. 344. But adverse possession, nevertheless, cannot be extended beyond the boundaries fixed by the deed itself and its own language. The plaintiff, however, got the full benefit of the deeds as color, and cannot complain of this instruction. The jury found (685) against him as to the fact of adverse possession, and so far therefore, as his title depends thereon, and not upon the alleged estoppel, he has lost upon the issue of fact under a charge free from error in that respect. There is also evidence that plaintiff acted in recognition of the defendant's title, showing that he knew where was the true boundary line of the land. There surely was sufficient and strong evidence to carry the case to the jury upon the question of boundary, if that was the proper way to try it.
A careful examination of the case leads us to conclude that there was
No error.
Cited: Fowler v. Coble, 162 N.C. 502; Richards v. Hodges, 164 N.C. 188. *Page 557