JULIO MEDINA, JR. v. TOWN AND COUNTRY FORD, INC., AND NCNB NATIONAL BANK OF NORTH CAROLINA

No. 8626SC1103

(Filed 19 May 1987)

1. Evidence § 19— similar occurrence evidence — admissibility to show intent, absence of mistake and bad faith

In an action to recover compensatory and punitive damages for malicious prosecution and treble damages for unfair trade practices arising out of plaintiff's attempt to purchase a car from defendant dealer, a witness's testimony concerning problems she experienced in a prior transaction with defendant dealer was admissible under N.C.G.S. § 8C-1, Rule 404(b) for the limited purpose of showing defendant's motive, intent, absence of mistake and bad faith in its dealings with plaintiff. Also, it was within the court's discretion under N.C.G.S. § 8C-1, Rules 403 and 404 to permit the witness to refer to her participation as a witness at a DMV hearing arising out of her transaction with defendant as part of her explanation of the circumstances surrounding the return to her of a fee withheld by defendant for recovery of a car from her.

2. Witnesses § 8.3— knowledge of DMV order — cross-examination for impeachment purposes

In an action for malicious prosecution and unfair trade practices arising out of plaintiff's attempt to buy a car from defendant dealer, cross-examination of defendant's finance manager about his knowledge of an order entered by the DMV in a case involving another of defendant's customers was properly permitted for the purpose of impeaching the credibility of the witness. N.C.G.S. § 8C-1, Rule 611(b).

Medina v. Town and Country Ford

**3. Unfair Competition § 1 — misrepresentations as unfair trade practice — submission to jury — harmless error**

  The trial court's error in submitting to the jury the question of whether defendant's representations constituted an unfair and deceptive trade practice was rendered harmless by the trial court's independent determination that defendant's acts constituted an unfair and deceptive trade practice.

**4. Malicious Prosecution § 15; Unfair Competition § 1 — punitive damages for malicious prosecution — treble damages for unfair trade practices**

  Plaintiff could properly recover punitive damages for malicious prosecution and treble damages for unfair trade practices in the sale of a car to plaintiff where defendant's misrepresentations in the sale of the car were wholly separate from the conduct underlying plaintiff's claim for punitive damages.

  Judge BECTON dissenting in part.


  APPEAL by defendant Town and Country Ford, Inc. from *Friday, Judge*. Judgment entered 6 May 1986 in MECKLENBURG County Superior Court. Heard in the Court of Appeals 11 March 1987.

  Plaintiff brought this action against defendants Town and Country Ford and NCNB National Bank of North Carolina. As against the dealership, plaintiff alleged, *inter alia*, breach of contract, malicious prosecution, and unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1, and, based on those claims, he sought treble damages pursuant to G.S. § 75-16 and punitive damages. As against NCNB, plaintiff sought actual and punitive damages for negligence and treble damages for unfair and deceptive trade practices.

  On 6 October 1982, plaintiff, the owner of a 1982 Ford Mustang, went to defendant Town and Country Ford, where he met with Tom Carano, a salesman. Plaintiff, Tom Carano and Terry Carano, sales manager of Town and Country Ford, discussed a trade for a 1978 Lincoln Continental. According to plaintiff, Terry Carano told him that he could purchase the Lincoln by trading his Mustang, paying $100 in cash, and financing the balance of the purchase price at $235 per month for thirty-six months. Plaintiff agreed to make the purchase approximately 10 to 15 minutes before closing time. Plaintiff gave Terry Carano a check for $100. Plaintiff then signed the sales contract and related papers "in blank" because there was not sufficient time before closing to prepare them on the dealership's computer typewriter.

Terry Carano told plaintiff to leave the dealership with the Lincoln he had just purchased. When plaintiff expressed concern over taking the car before having obtained financing Terry Carano told him that "we will take care of things . . . [a]ll we need now is $1,500.00 so we can make sure in good faith you are going to buy this car . . . ." Plaintiff responded that he did not have $1,500 in his account at the bank. Carano told plaintiff that he should sign the check "in blank" and that it would be returned to him as soon as financing on the car was complete. Plaintiff followed Carano's instructions and left with the Lincoln.

The following week plaintiff received a copy of the written sales contract. The terms included in this written contract did not correspond to the parties' alleged oral contract. Specifically, the sales contract contained an undiscussed $1,500 "Cash Due on Delivery" figure and a monthly payment of $265, instead of $235. Plaintiff immediately contacted the dealership about the discrepancy and one of the Caranos told him that "in order to go ahead with the financing on [this vehicle, plaintiff would] have to put in another $1,500.00 on top." Plaintiff did not agree to this request, and he returned the Lincoln to the dealership. Plaintiff then asked for his Mustang and was informed that it had been sold. Plaintiff left the Lincoln with the dealership and walked home.

Town and Country subsequently attempted to negotiate plaintiff's $1,500 check, and, when it was returned unpaid, it obtained a warrant for plaintiff's arrest. When the check case came on for trial, no one from the dealership was present and the case was dismissed. Again, after the initiation of this lawsuit, Town and Country obtained a second warrant for plaintiff's arrest for the issuance of the $1,500 check. This second case was also dismissed.

According to defendant Town and Country Ford, the parties did not enter into the oral contract claimed by plaintiff and plaintiff did not execute the sales contract and related papers "in blank." Rather, according to the dealership, the parties entered into a written contract for the purchase and sale of the Lincoln under the following terms: a $1,600 cash downpayment and a trade-in of the 1982 Mustang with the balance of the purchase price financed through defendant NCNB National Bank of North Carolina.

Two sets of issues were submitted to the jury regarding defendant Town and Country Ford. The first set was submitted and answered as follows:

1. Did the Plaintiff, Julio Medina, enter into a contract with Town and Country Ford, Inc., for the purchase of a 1978 Lincoln Continental automobile?

Answer: Yes

2. If so, did Defendant, Town and Country Ford, Inc., breach this agreement?

Answer: Yes

3. If so, what amount of damage, if any, has Plaintiff, Julio Medina, suffered as a result of said breach.

Answer: $1,334.50

4. Did Defendant's representations made to the Plaintiff in connection with the purchase of the 1978 Lincoln Continental automobile constitute unfair and deceptive acts or practices in commerce, contrary to the provisions in G.S. 75-1.1?

Answer: Yes

The second set was submitted and answered as follows:

1. Did the Defendant, Town and Country Ford, Inc., procure criminal process, a warrant, against the Plaintiff, Julio Medina, with malice and without probable cause?

Answer: Yes

2. If so, what amount of compensatory damages, if any, is Plaintiff, Julio Medina, entitled to recover from Defendant, Town and Country Ford, Inc.?

Answer: $2,250.00

3. What amount of punitive damages, if any, does the Jury in the sound discretion award the Plaintiff from the Defendant?

Answer: $62,500.00

A third set of issues was submitted against defendant NCNB and the jury returned a verdict in favor of NCNB.

The trial court entered judgment, in pertinent part, as follows:

> The Jury having found by their answer to Issue 4 of the first set of Issues that the acts of Defendant were committed, the court concludes that such acts were unfair and deceptive trade practices and trebles the amount of actual damages of $1,334.00 found by the Jury in answer 3 of the first set of Issues to $4,003.50 and adds to said sum of $4,003.50, the compensatory damages of $2,250.00 and the punitive damages of $62,500.00 in accordance with the answers to Issues 2 and 3, respectively of the second set of Issues . . . .

From the judgment entered on the verdict, defendant Town and Country Ford appealed.

*Weinstein & Sturges, P.A., by Fenton T. Erwin, Jr., for plaintiff-appellee.*

*Bailey, Patterson, Caddell & Bailey, by Allen A. Bailey and H. Morris Caddell, Jr., for defendant-appellant Town and Country Ford, Inc.*

WELLS, Judge.

[1] Defendant contends the court erred in admitting the testimony of Ms. Sheree King "as to (a) a prior transaction she had with Town and Country Ford; and (b) as to her knowledge of an investigation and hearing conducted by the North Carolina Department of Motor Vehicles of . . . Town and Country Ford arising out of Ms. King's transaction." We disagree.

After conducting a *voir dire* examination of Ms. King, the court admitted her testimony for the limited purpose of showing intent, plan, knowledge or absence of mistake and not as substantive evidence. The court further instructed the jury to consider her testimony for this limited purpose only.

Ms. King testified about a transaction she had with defendant in August 1981, approximately fourteen months prior to the events involving plaintiff. In this transaction, Ms. King purchased a car from defendant. After agreeing to the sales price, Ms. King made a $3,000 cash downpayment on the car, signed a buyer's order and invoice and executed other sales-related documents. She

then left the dealership with the car. Shortly thereafter on the same day, Ms. King received a telephone call from the dealership telling her to return the car as it had already been sold to another customer. Ms. King refused to return the car. The morning after the sale, Ms. King discovered that the car was missing. When she called the police to report the car as being stolen she was advised that it had been repossessed for nonpayment by defendant at 6:00 a.m. that morning. Ms. King never re-obtained the car. On 18 August, Ms. King received a check for $2,851.10 representing the balance of her downpayment less a recovery fee of $148.90 pocketed by defendant.

Ms. King further testified that she appeared as a witness for the State at a hearing conducted by the North Carolina Department of Motor Vehicles (DMV) concerning defendant's withholding of the $148.90 from the $3,000 downpayment. According to Ms. King, she received the $148.90 two days after she "received the summons to appear at the hearing in Raleigh."

We hold that Ms. King's testimony was admissible under N.C. Gen. Stat. § 8C-1, Rule 404(b) of the North Carolina Rules of Evidence. Rule 404(b) provides:

> (b) *Other crimes, wrongs, or acts.* — Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

"Rule 404 is virtually identical to Federal Rule of Evidence 404, the legislative history of which tends to favor admissibility." *State v. Wortham*, 80 N.C. App. 54, 341 S.E. 2d 76, *disc. rev. allowed*, 317 N.C. 341, 346 S.E. 2d 148 (1986). Under the federal rule, similar occurrence evidence, like the kind offered here through the testimony of Ms. King, has generally been held admissible. *See Kerr v. First Commodity Corp. of Boston*, 735 F. 2d 281 (8th Cir. 1984) and *Jay Edwards, Inc. v. New England Toyota Distributor*, 708 F. 2d 814 (1st Cir.), *cert. denied*, 464 U.S. 894 (1983).

We hold that the similar occurrence evidence admitted here was probative of defendant's motive, intent, absence of mistake

and possible bad faith in its dealings with plaintiff and did not simply portray an unrelated "bad act" by defendant. *See id.* As such, the evidence was relevant to the issues of unfair and deceptive trade practices, malicious prosecution and punitive damages, and it thus was properly admitted under Rule 404(b). *See State v. Morgan,* 315 N.C. 626, 340 S.E. 2d 84 (1986). The court "was entitled to conclude, without abusing its discretion, that the permissible probative value of the evidence outweighed any prejudice [under Rule 403]." *Jay Edwards, Inc., supra. See also* Commentary to Rule 404(b). Further, the court gave the jury proper limiting instructions with the admission of this evidence, thereby limiting the potential for unfair prejudice. *Kerr, supra.* Accordingly, we hold that the court did not err in admitting the testimony of Ms. King regarding her prior transaction with defendant.

Defendant also contends that the court erred in permitting Ms. King to refer to her appearance as a witness at the DMV hearing. Ms. King simply testified that (1) she appeared as a witness at the hearing, (2) the hearing concerned defendant's withholding of a $148.90 recovery fee, and (3) two days after she was called to appear at the hearing she received the money. Ms. King did not testify about the actual hearing proceedings or its final disposition. We hold that it was well within the court's discretion under Rules 403 and 404 to permit Ms. King to refer to her participation as a witness at the DMV hearing as part of her explanation of the circumstances surrounding the return of the $148.90 recovery fee. *See* Commentary to Rule 404(b).

Defendant further contends that "the admission of the [DMV] Order . . . 'only to corroborate that Ms. King was present at the hearing . . .' " was error in that "the Order represented additional collateral material on a matter not in issue." However, after carefully reviewing the record, we hold that the events at trial do not support defendant's assertions regarding the admission and improper use of this evidence. These contentions are rejected. We also reject defendant's contention that a subsequent comment by the trial court about certain other evidence related to Ms. King's testimony constituted reversible error.

[2] Defendant contends the court erred in permitting counsel for plaintiff to cross-examine defendant's witness, William Hanna, Jr., about a 26 May 1982 Order entered by the DMV in the Sheree King case. We disagree.

In general, Rule 611(b) of the North Carolina Rules of Evidence provides that "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." Further,

> The primary purpose of impeachment is to reduce or discount the credibility of a witness for the purpose of inducing the jury to give less weight to his testimony in arriving at the ultimate facts of the case. . . . Any circumstance tending to show a defect in the witness's perception, memory, narration or veracity is relevant to this purpose.

*State v. Looney*, 294 N.C. 1, 240 S.E. 2d 612 (1978), *quoting* Stansbury, North Carolina Evidence, Brandis Rev. § 38.

Mr. Hanna testified on cross-examination that he was the finance manager of defendant and that he had knowledge of its practices and procedures. After conducting a *voir dire* examination, the court allowed counsel for plaintiff, over the objection of defendant, to impeach Mr. Hanna's credibility in this respect by asking him the following question:

> Q. Mr. Hanna, I will ask you to state whether or not you know of the Order that was entered by the North Carolina Commissioner of Motor Vehicles on the 26th day of May 1982 . . . [i]n which Order the Dealer License Number 4716 for Town and Country Ford, Incorporated, was revoked to engage in the business of a motor vehicle dealer under Article 12 of the North Carolina General Statutes effective thirty days after the service of this Order, and the revocation was suspended . . . and that Town and Country Ford and its dealer's license was placed on probation for one year upon certain conditions, that you not violate any of the motor vehicle laws in the State of North Carolina and that you not engage in any fraudulent or deceptive practices in advertising, selling or offering for sale vehicles that were owned by or that were on consignment to Town and Country, and did you know that that Order was entered in the Sheree King case?
>
> . . .
>
> A. No, I did not.

Just prior to this exchange, the court instructed the jury as follows:

The Court wants to caution the jury that the Court will allow the evidence which is forthcoming solely for the purpose of impeaching the credibility of this witness and for no other purpose. You may not consider it for any other purpose than that of impeachment, if you find it does do so.

We hold that the foregoing cross-examination fits within the broad definition of " '[a]ny circumstance tending to show a defect in the witness's perception, memory, narration or veracity . . .,' " *State v. Looney, supra*, and that the court, after giving the jury an appropriate limiting instruction, properly allowed it in the exercise of its sound discretion pursuant to Rule 611(b). *See also Kerr, supra*. This contention is rejected.

[3] Defendant contends the court erred in submitting the unfair commercial practice issue to the jury. Specifically, defendant contends that the court improperly submitted the question of whether defendant's representations constituted an unfair and deceptive trade practice instead of deciding this issue itself as a matter of law after the jury returned its verdict. While we agree with defendant, we hold, for the reasons stated below, that the court's error in this regard was harmless.

"In cases under G.S. 75-1.1 and 75-16, it is ordinarily the province of the jury to find the facts, and based on the jury's findings the court must then determine as a matter of law whether the defendant's conduct violated G.S. 75-1.1." *Love v. Pressley*, 34 N.C. App. 503, 239 S.E. 2d 574 (1977), *disc. rev. denied*, 294 N.C. 441, 241 S.E. 2d 843 (1978), *citing Hardy v. Toler*, 288 N.C. 303, 218 S.E. 2d 342 (1975). The court here, however, improperly submitted this question directly to the jury. *See Mapp v. Toyota World, Inc.*, 81 N.C. App. 421, 344 S.E. 2d 297, *disc. rev. denied*, 318 N.C. 283, 347 S.E. 2d 464 (1986).

After the jury returned its verdict, the court specifically concluded in the judgment entered: "The jury having found by their answer to Issue 4 of the first set of Issues that the acts of Defendant were committed, *the court concludes that such acts were unfair and deceptive trade practices* and trebles the amount of actual damages. . . ." (Emphasis added.) The court's error in submitting this question of law to the jury thus was "cured" or rendered harmless and non-prejudicial by the court's independent determination that defendant's acts constituted unfair and decep-

Medina v. Town and Country Ford

tive trade practices. *Ellison v. Rix*, 85 N.C. 77 (1881) (though trial court improperly submitted question of law to the jury, as the finding was in accordance with the ruling of the court, there was no prejudicial error). *See also Ipock v. Gaskins*, 161 N.C. 673, 77 S.E. 843 (1913). *See generally*, 5A CJS Appeal & Error § 1760. We also note that the trial court carefully instructed the jury that it was for them to determine whether the acts complained of by plaintiff were acts in trade or commerce. The additional requirement given by the trial court's instructions and included in issue number 4 that the acts complained of were also unfair and deceptive could only have benefited defendant. This contention is rejected.

[4] We note that we are not confronted here with the problem which arose in *Mapp, supra*, wherein plaintiff sought to recover both punitive damages and treble damages for the same conduct. In the instant case, separate conduct giving rise to independent claims provides the underlying basis for each type of damages. By submitting separate sets of issues and giving detailed instructions on each issue, the court clearly limited the jury in its deliberations on the punitive damages issue to consideration of the conduct giving rise to defendant's liability for malicious prosecution. Likewise, defendant's liability for treble damages under G.S. § 75-1.1 and G.S. § 75-16 is based on conduct, *viz.*, defendant's misrepresentations in connection with the sale of the Lincoln to plaintiff, which is wholly separate from the conduct underlying defendant's liability for malicious prosecution and the punitive damages awarded in connection with that claim.

We do not reach defendant's remaining argument as it is premised on defendant's earlier contentions.

No error.

Chief Judge HEDRICK concurs.

Judge BECTON concurs in part and dissents in part.

Judge BECTON dissenting in part.

Considering the long established rule, unchanged by our new Evidence Codes, that evidence of "other acts" will be permitted

only upon a showing of substantial similarity and identity of circumstances, *see, e.g., Martin v. Amusements of America, Inc.*, 38 N.C. App. 130, 134, 247 S.E. 2d 639, 642 (1978), *disc. rev. denied*, 296 N.C. 106, 249 S.E. 2d 804 (1978) and believing that Ms. King's testimony was not relevant to the issues of fact tried in this case, I dissent. In my view, the dissimilar occurrence evidence admitted was not probative of defendant's motive, intent, absence of mistake or possible bad faith in dealings with plaintiff. Rather, the challenged evidence simply portrayed an unrelated "bad act" by defendant. Because N.C. Gen. Stat. Sec. 8C-1, Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith," I vote for a new trial on the breach of contract claim. However, believing that the inadmissible "bad act" evidence did not affect the malicious prosecution claim, I concur in the majority's resolution of that claim.